In re Barbara J. PEPPER, SS
# 523–15–2745, Debtor.

Barbara J. PEPPER, Movant,

v.

PUBLIC SERVICE EMPLOYEES
CREDIT UNION, Respondent.

Bankruptcy No. 97–10574 CEM.

United States Bankruptcy Court,
D. Colorado.

June 27, 1997.

Jerold A. Greenker, Colorado Springs, Co, for debtor Barbara Pepper.

Barry Meinster, Meinster & Fancy, P.C., Denver, CO, for respondent Public Service Co. Credit Union.

## OPINION AND ORDER ON DEBTOR'S MOTION TO AVOID LIEN

CHARLES E. MATHESON, Chief Judge.

The Debtor, Barbara J. Pepper, ("Debtor") filed a "Motion to Avoid Judgment Lien Pursuant to 11 USC Section 522(f)" ("Motion"). She seeks to avoid the judgment lien of Public Service Employees Credit Union ("PSCU") which encumbers her residence, 2539 Balboa, Colorado Springs, CO 80907.

The Debtor gave notice of her Motion pursuant to L.B.R. 202, and PSCU flied a Response to Motion to Avoid Judgment Lien ("Response") one day late. Debtor opposed the Response pointing out its untimeliness. Shortly thereafter, PSCU filed a Motion to Dismiss the Debtor's Motion to Avoid Judgment Lien ("PSCU's Motion to Dismiss"). The Court set the matter for hearing and heard the arguments of the parties on the issues presented by the various pleadings.[1] The only real factual dispute is as to the value of the property but the legal issues may be confronted at this juncture without trying and deciding that fact. At the close of the hearing the Court took the matter under advisement.

The Court must consider, as a threshold matter, the timeliness of PSCU's Response and Motion to Dismiss. Counsel for PSCU acknowledges that the untimeliness of his Response was the result of neglect which he argues is excusable. The Supreme Court has enunciated a very flexible standard for determining whether neglect is excusable. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court in *Pioneer* held that the determination of whether the neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. at 395, 113 S.Ct. at 1498.

Here there was only a delay of one day and there is simply no prejudice to the Debtor or the judicial proceedings on the Motion. The notice procedure mandated by this Court's Local Rules does not permit the

---

1. This matter was set on the Court's "Law and Motion" Calendar. This calendar permits prompt setting of all evidentiary and nonevidentiary matters. At the time of these hearings, the Court will resolve issues which involve uncontested facts or questions of law. If the issue to be resolved involves contested facts, the time set is utilized as a scheduling conference.

Debtor to request an order on a motion subject to the local rule until at least three court days following the response date specified in the notice. Thus, the matter had neither come before the Court for review nor had an order entered. The Debtor had, as of that point, taken no action on the Motion and could not until an order entered. Moreover, although the reasons stated by counsel for the delay were certainly within his control, there is no doubt that he acted promptly upon discovering the neglect and there is no basis to doubt his good faith. In addition, without addressing the merits of the Motion to Dismiss or PSCU's Response, facially, the pleadings allege a meritorious defense. Accordingly, the Debtor's response to the Response is rejected and the PSCU's Motion to Dismiss and Response will be considered by the Court.

As noted, other than the value of the Debtor's residence, there is no dispute about the facts. The Debtor contends his residence has a value of $90,000 and PSCU asserts that the value is $98,000. The property is encumbered by a first deed of trust in the amount of $61,314 and the Colorado homestead exemption amount is $30,000. There is no dispute that the Debtor is entitled to claim the full exemption. PSCU's judgment is in the amount of $2,670.

Prior to the 1994 amendments, section 522(f) of the Bankruptcy Code provided that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . ., if such lien is a judicial lien. . . ." By its terms, in order for the debtor to obtain relief the debtor had to establish that he owned property, that he was entitled to claim the property as exempt, that the property was subject to a lien and that the lien impaired the ability of the debtor to realize on the exemption.

Section 101(36) of the Bankruptcy Code defines a judicial lien to mean a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). And, section 101(37) defines "lien" to mean a "charge against or interest in property to secure pay-

ment of a debt or performance of an obligation." 11 U.S.C. § 101(37).

■ The question of whether a "lien" becomes a "charge against or an interest in property" is answered by state law. Once a lien is determined to be a "lien" within the meaning of 101(37), then the question of whether a lien impairs an exemption is answered by federal law. See *In re Sanders,* 39 F.3d 258 (10th Cir.1994); *Matter of Henderson,* 18 F.3d 1305, 1308–1309 (5th Cir. 1994); *In re Chabot,* 992 F.2d 891, 893–894 (9th Cir.1993).

■ The pertinent Colorado judgment lien statute provides that:

The transcript of the docket entry of any judgment in the judgment docket, certified by the clerk, may be filed with the recorder of any county; and from the time of filing such transcript the judgment shall become a lien upon all the real property of such judgment debtor, not exempt from execution in such county, owned by him or which he may afterwards acquire until said lien expires. The lien shall continue for six years from the entry of judgment unless the judgment is previously satisfied. C.R.S. § 13–52–102.

By its terms, this section provides that a recorded judgment will serve to encumber any nonexempt property the debtor owns at the time of recording, or thereafter acquires.

The judgment lien statute must be read in conjunction with the homestead exemption statute. That statute provides that:

Every homestead in the state of Colorado occupied as a home by the owner thereof or his family shall be exempt from execution and attachment arising from any debt, contract, or civil obligation *not exceeding in value the sum of thirty thousand dollars in actual cash value in excess of any liens or encumbrances on the homesteaded property in existence at the time of any levy of execution thereon.* C.R.S. § 38–41–201. (Emphasis added).

The Colorado Court of Appeals applied that statute to resolve a dispute between a judgment creditor and the purchaser of the judgment debtor's residence over whether the

judgment creditor could execute on the property now in the hands of the purchaser. *City Center Nat. Bank N.A. v. Barone,* 807 P.2d 1251 (Colo.App.1991). The Colorado court held that the statute, which creates the right to a judgment lien, limited the lien to real property not exempt from execution. The court observed that from the time the judgment was recorded through and until the sale, the judgment debtor had less than $20,-000 [2] in net equity in his residence. It concluded that the judgment creditor's judgment did not *become a lien* upon the real property upon the filing of the transcript of judgment or at any time thereafter, and thus did not survive the sale of the property by the debtor. *Id* at 1252.

In light of *Barone,* section 522(f) appeared to have no application in the District of Colorado, at least as applied to a debtor's homestead. Because a judgment lien could never attach to the homestead, it could never "impair" the homestead. In Colorado, whether the home is sold voluntarily by the owner, or involuntarily by the sheriff pursuant to a writ of execution, the owner is always entitled to receive the amount of the homestead exemption, now set at $30,000. *In re Fry,* 83 B.R. 778 (Bankr.D.Colo.1988). The analysis of the *Fry* opinion was subsequently confirmed by the Tenth Circuit applying an analogous Utah law. *David Dorsey Distrib. v. Sanders (In re Sanders),* 39 F.3d 258 (10th Cir.1994). In addition, the Tenth Circuit reached the same conclusion applying Colorado law. *In re Shafner,* 82 F.3d 426 (10th Cir.1996) (Unpublished Disposition).

The logic of *Fry* would seem to apply even in the absence of the *Barone* analysis. In truth, in any state that has opted out of the federal exemption scheme, logic would dictate the conclusion that, based on a literal reading of section 522(f), there would never be an occasion to seek relief under that section. This is so because section 522(f) allows a court to void a lien only to the extent it "impairs" an exemption. However, in the classic sense, an exemption at state law can *never* be impaired by a judgment lien because, by definition, the "exemption" serves

to exclude the exempt property from the reach of a writ of execution. This is the result reached by the court in *In re Dixon,* 885 F.2d 327 (6th Cir.1989)(Applying Ohio law). Notwithstanding the facial logic of this analysis, the courts have struggled to find a way to apply section 522(f) and the reported cases in which orders have entered voiding liens as against state created exemptions are legion.

If it is true that a judgment lien can never impair a debtor's state created exemption, then what purpose is served by the inclusion of section 522(f) in the Code? The answer is that the section is necessary and useful in those states that have not opted out of the federal exemption scheme established in section 522(d) of the Code. This is because, pursuant to section 522(c), property exempted under section 522 remains subject to a lien unless the lien is avoided under section 522(f). 11 U.S.C. § 522(c)(2)(A)(i). If a state exemption is at issue, as discussed above, a judgment lien will not impair a debtor's homestead even if the lien is not avoided. However, in a non-opt out state that does not have a homestead exemption, a judgment lien will be enforceable against the debtor's homestead exemption afforded by 11 U.S.C. § 522(d)(1) unless the lien is avoided under section 522(f). Thus, section 522(f) is a necessary provision to insure that debtors, in states that have not opted out of the federal exemption scheme, will have the benefit of the statutory exemption.

This analysis of the law, if correct, causes disparate results in different jurisdictions. In states like Colorado that have opted out of the federal exemptions, the judicial lien is not avoidable and remains in place after bankruptcy. *In re Wrenn,* 40 F.3d 1162 (11th Cir.1994). Thus, if the debtor's property is sold in the future, the debtor will receive the amount of his homestead, but any net proceeds available after the payment of senior voluntary encumbrances and the homestead must be applied to the payment of the judgment lien. However, in states opting into the federal exemptions, the debtor could avoid the lien (even when there is no equity in the property over the consensual liens),

---

2. The amount of the homestead exemption at that time.

thereby assuring that the debtor can realize fully on any future increase in the value of the property. *In re Chesanow*, 25 B.R. 228, 230–31 (Bankr.D.Conn.1982).

In 1994 Congress amended section 522(f) to, among other things, define what is meant by the phrase "impairs an exemption." [3] The new provision states:

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.

The question then is, do these amendments now mandate a different result in this District from that reached in *Fry?*

The legislative history reported at H.R. Rep. 103–835, 103rd Cong., 2nd Sess. 52–53 (Oct. 4, 1994) U.S. Code Cong. & Admin. News 1994 at pp. 3360–3362; 140 Cong. Rec. H10770 (Oct. 4, 1994) explains that the addition of section 522(f)(2) to the Code was intended to reverse the effect of certain opinions by different courts. Specifically, the areas addressed were:

1. Some courts had held that, in cases where there was no equity in the property over and above the voluntary encumbrances, no order would enter voiding any outstanding judicial liens. *In re Gonzalez*, 149 B.R. 9 (Bankr.D.Mass.1993). Congress noticed that most courts and commentators had understood that in this situation the debtor "is entitled to exempt his or her residual interests, such as a possessory interest in the property, and avoid a judicial lien ... in any amount, that attaches to that interest." Congress intended that the amendment would make clear that liens in this situation are avoidable.

2. Similarly, in cases where there is equity above the voluntary encumbrance sufficient to pay part or all of the homestead, a judgment lien should be avoided.

Congress expressed its intention that postpetition increases in available equity ought not be subject to the judicial lien.

3. The Sixth Circuit, in *In re Dixon*, 885 F.2d 327 (6th Cir.1989), had ruled that, in Ohio, a judicial lien can never impair an exemption and, therefore, cannot be avoided. The analysis is essentially the same as in the *Fry* decision, *supra.* Congress intended to overrule this result. The legislative history states:

[The *Dixon* approach] leaves the debtor in the situation where, if he or she wishes to sell the house after bankruptcy, that can be done only by paying the lienholder out of equity that should have been protected as exempt property. By focusing on the dollar amount of the exemption and defining "impaired," the amendment should correct this problem. H.R. Rep. 103–835, 103rd Cong., 2nd Sess. 52–53 (Oct. 4, 1994); 140 Cong. Rec. H10770 (Oct. 4, 1994).

From a review of the legislative record it becomes apparent that Congress contemplated that the amendments would not only define "impairment," they would also have the effect of recasting the very nature of the exemption. For example, in Ohio (unlike Colorado) the homestead exemption only protected the debtor in the event of an involuntary execution on the judgment lien. *In re Dixon*, 885 F.2d 327 (6th Cir.1989). In the event of a voluntary sale the exemption was apparently not available. However, Congress intended to change this result so that the exemption will be available even in the event of a voluntary sale.

 Viewing the amendments to section 522(f) in light of the legislative record, the Court can reach only one conclusion. It appears that the intent was to seek to freeze the relative rights of the debtor and the creditors as of the date of the filing of the petition. On that date the debtor puts all of his nonexempt property on the table. If there is value in the homestead property in excess of senior encumbrances and the exemption, the creditors get the benefit of that

---

**3.** Bankruptcy Reform Act of 1994, Pub.L. 103–394, § 303 (Oct. 22, 1994). These amendments apply only to cases commenced after October 22, 1994.

value. A judgment lien would be recognized to that limited extent and voided to the extent there is no value to support the lien. The debtor would exit bankruptcy free of any judgment liens except to the extent they are supported by equity in excess of the homestead, thereby assuring that the debtor will reap the benefit of any future increase in value (or increase in equity created by the pay down of an existing senior voluntary encumbrance).

In Colorado the court in *Barone,* found that the judgment lien did not "attach" to the property because there was no "net equity." In *Barone* the court was dealing with a situation where the judgment debtor had sold the property and the sale did not generate enough proceeds to pay in full the first mortgagee, the costs of sale and the homestead. However, even though the judgment lien in *Barone* did not "attach" to the property, it did serve to encumber the debtor's "residual interests" in the property—the debtor's right to possession and, most importantly, the right to future appreciation. C.R.S. § 13-52-105. Had the debtor in *Barone* not sold the property, the judgment lien would have remained in place and would have been paid if the property increased in value or if the debtor created equity by paying down the senior voluntary encumbrances on the property.

The 1994 amendments were intended to preserve to the debtor his "residual interests" and to cap the interests of a judgment lienor as of the date of the filing of this case. Pursuant to section 522(f)(2), the question of "impairment" is to be determined by a purely mathematical formula, without regard to the question of whether, under the particular law, the exemption is actually impaired. Under the new provisions a judgment lien is determined to impair the exemption to the extent that the sum of the judgment lien, all other liens on the property and the amount of the homestead exemption exceed the value of the property.

The Court concludes that the 1994 amendments have changed the law such that *In re Fry* is no longer applicable.[4] Congress has changed both the character of the exemption

and the definition of impairment and it is the statutory definition set forth in 11 U.S.C. § 522(f)(2) that must be applied.

The language used by Congress to define "impairment" is, unfortunately, less than precise. Section 522(f)(2)(A) speaks of adding the homestead, the "lien," and all "other liens" on the property. However, a "lien" does not have a sum. A "lien" is defined by the amount of debt it secures and by the value of the property. A "lien" cannot ever exceed the value of the property it encumbers, regardless of the amount of debt the lien secures. Applied literally, then, section 522(f)(2)(A) accomplishes nothing because the "sum" of the liens and the homestead could never exceed the value of the property and the "lien" could, therefore, never "impair" the exemption.

This Court is unwilling to ascribe such a restricted meaning to the language used by Congress because to do so renders the statute meaningless. Under these conditions it is appropriate to look to the legislative history, even if the statutory language appears to be clear. *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–242, 109 S.Ct. 1026, 1030–1031, 103 L.Ed.2d 290 (1989) (The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Here, the legislative history clarifies that what is meant by "lien" in section 522(f)(2)(A) is the amount of the judgment or other debt that is secured by the lien. This is consistent with the definition of "lien" in section 101(37) of the Code. Thus, in making the section 522(f)(2)(A) analysis, one is to add the amount of the allowed homestead, the amount of the judgment and the outstanding balance of the debt secured by all other liens. To the extent this sum exceeds the value of the property, the judgment lien "impairs" the exemption and may be avoided.

In the case now before the Court the exemption is $30,000, the balance of the debt secured by the first mortgage is $61,314, and

---

4. In cases filed after October 22, 1994.

the judgment is $2,670, for a total of $93,984. The debtor asserts that the value of the property is $90,000, which would result in a determination that the judgment lien is to be avoided. The creditor argues that the property value is $98,000, and asserts that the lien may not be avoided. The debtor argues that, even at $98,000 the lien must be avoided because the net realizable amount, after costs of sale, would be less than $98,000.

The Code specifies that "value" means "fair market value as of the date of the filing of the petition" (or, as to property that comes into the estate at a later date, as of the date such property becomes property of the estate). 11 U.S.C. § 522(a)(2). This definition fails to answer the question presented which is whether it is to be the gross fair market value, or the net value after deducting the costs of sale.

Section 522(f)(2)(A) speaks of the "value that the debtor's interest in the property would have in the absence of any liens." This language must be contrasted with the language in the Code that deals with the fixing of the amount of a secured claim. There the statute speaks of "the value of such creditor's interest in the estate's interest in such property...." 11 U.S.C. § 506(a). In any event the value is to be determined in light of the purpose of the valuation and of the proposed disposition of the property. *Ibid.*

The Supreme Court has recently dealt with the section 506(a) valuation issue in a case involving a Chapter 13 cramdown of a secured creditor. There the Court held that the property had to be valued in light of the cramdown and the debtor's proposed retention of the property. The Court concluded that the property should be valued at replacement value; that is, the value should equal what the debtor would have to pay to purchase like property. *Associates Commercial Corp. v. Rash,* — U.S. —, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

As noted, section 522(f)(2)(A) requires a determination of the value of the debtor's interest in the property. Because the debtor proposes to retain the property the *Rash* analogy is apt. The Court concludes that the appropriate measure of value is what it would cost the debtor to purchase this, or like, property. In other words, "value" means fair market value without any reduction for the cost of sale.

The result reached by the Supreme Court does not impair the Debtor's ability to realize the full amount of his homestead. The Colorado statute governing execution sales specifies that it is the judgment creditor who must bear the costs of sale. Out of the sale proceeds the sheriff must first pay the homestead amount to the debtor. If there are no remaining funds to pay the costs of sale, those costs must be paid by the buying creditor. C.R.S. § 38–41–206(4). Also, the court in *Barone* speaks of the lack of any "net equity" to support the lien of the judgment creditor. One must remember that in *Barone,* the court was dealing with the property after it had been sold by the debtor and the sale proceeds, net of the costs of sale, did not exceed the first mortgage and the exemption. Thus even if the value of the Debtor's home is $98,000, and the creditor's lien is not avoided, if the property is sold, the first mortgage, the homestead and the expenses of sale must all be paid before the lien is paid.

The Court's conclusion as to the proper application of the law leaves remaining the contested valuation of the property. If the Debtor is correct, an order should enter avoiding the lien. If PSCU is correct, the Motion must be denied. Accordingly, it is

ORDERED, that an evidentiary hearing is set for **Friday, July 18, 1997, at 9:30 a.m. in Courtroom C**, U.S. Bankruptcy Court for the District of Colorado, U.S. Custom House, 721 19th Street, Denver, Colorado for the purpose of fixing the value of the real property.