**In re Dennis R. NEWELL, Debtor.**

**No. 03–26743 ABC.**

United States Bankruptcy Court, D. Colorado.

March 19, 2004.

Dana M. Arvin, Greenwood Village, CO, for Debtor.

### ORDER VOIDING JUDICIAL LIEN

A. BRUCE CAMPBELL, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtor's Verified Motion to Void Judicial Liens under Section 522(f)(1) and the objection thereto filed by Pikes Peak National Bank ("Pikes Peak"). At the preliminary hearing on February 4, 2003, the parties agreed to submit the matter on stipulated facts which were filed with the Court on February 9, 2003 (the "Stipulation").

### FACTS

According to the parties' Stipulation, the undisputed facts material to the disposition of this matter are as follows:

The Debtor owns certain real property he claims as a homestead (the "Property"),[1] located at 6015 West Exposition Ave., in Jefferson County Colorado, more particularly described as follows:

Lot 1, Cheryl Subdivision, County of Jefferson, State of Colorado

The value of the Property, without adjustment for disposition costs, is $229,000.00.

In March, 2003, the Debtor obtained a mortgage loan from Long Beach Mortgage in the amount of $220,000.00. The $220,000.00 loan from Long Beach Mortgage was secured by a deed of trust on the Property which was recorded on July 10, 2003.

Pikes Peak recorded a pre-judgment Writ of Attachment, in the amount of $40,000.00, against the Property on July 9, 2003. On July 19, 2003, Pikes Peak caused a Notice of Levy to be recorded against the Property.

On August 25, 2003, the Debtor filed his voluntary Chapter 7 petition.

On September 30, 2003, after the petition herein was filed, Pikes Peak received a judgment against the Debtor in state court in the amount of $39,014.82, plus court costs. A transcript of the judgment was filed in the Jefferson County real property records on or about October 13, 2003.[2]

The Debtor's Verified Motion seeking to void the lien of Pikes Peak under 11 U.S.C. § 522(f) was filed on or about November 25, 2003.

### DISCUSSION AND CONCLUSIONS

There is no question that the lien created by Pikes Peak's Writ of Attachment and Notice of Levy is a "judicial lien" as that term is defined by 11 U.S.C. § 101(36) which provides that a judicial lien "means

---

1. Although not contained in the parties' Stipulation, there is no dispute that the Property is occupied by the Debtor as his primary residence and that the Debtor is entitled to claim a homestead exemption in the Property pursuant to C.R.S. § 38–41–201. See, Schedule C filed by the Debtor, Paragraph 4 of the Verified Motion to Void Judicial Liens filed by the Debtor, and Paragraph 1 of the Objection filed by Pikes Peak.

2. The entry of the judgment and the recording of the transcript of the judgment were in violation of the automatic stay of 11 U.S.C. § 362(a), and were therefore void and of no effect. *Franklin Sav. Ass'n. v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 (10th Cir. 1994). The parties acknowledged in open court that the fact that the judgment was obtained post-petition creates several issues regarding the validity of the lien created by the pre-judgment writ of attachment. However, for the purposes of this decision, the parties agreed the Court could assume Pikes Peak's lien was a valid judicial lien with a priority date of July 9, 2003.

[a] lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."

■ Avoidance of judicial liens is governed by 11 U.S.C. § 522(f). This section provides that the debtor may avoid a judicial lien (with certain exceptions not relevant here), "to the extent that such lien impairs an exemption" to which the debtor is entitled. The question of whether a lien "impairs an exemption" is answered by federal law. *In re Pepper*, 210 B.R. 480 (Bankr.Colo.1997).

When first enacted, § 522(f) did not define *when* a judicial lien impairs an exemption. In 1994, Congress added § 522(f)(2)(A), a definition of what constitutes impairment of an exemption, in order to resolve the conflicting judicial interpretations which had arisen under the prior law. *See*, H. Rep. No. 835, 103rd Cong., 2d Sess. 52–54 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 3340.

Section 522(f)(2)(A) provides that:

For purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Under § 522(f)(2)(A) the question of "impairment" is to be determined by a purely mathematical, "bright line" formula which no longer looks to or depends upon state law. *In re Pepper, supra; In re Kolich*, 273 B.R. 199 (8th Cir. BAP 2002), *aff'd*, 328 F.3d 406 (2003); *In re Holland*, 151 F.3d 547 (6th Cir.1998). The application of this formula to the facts of this case is straightforward.

The amount claimed due by Pikes Peak on its judgment lien is $40,000.00. The stipulated amount of all other liens on the Property (in this case only the deed of trust held by Long Beach Mortgage) is $220,000.00. The amount of the exemption to which the Debtor is entitled pursuant to 11 U.S.C. § 522(b)(2) and C.R.S. § 38–41–201 is $45,000.00. The total of the liens on the Property, plus the exemption is $305,000.00. The stipulated value of the Debtor's interest in the property is $229,000.00. Thus, the amount calculated per § 522(f)(2)(A)(i), (ii), and (iii), exceeds the value of the Debtor's interest in the Property by $76,000.00.

Pursuant to a literal application of § 522(f)(2)(A), Pikes Peak's judicial lien impairs the Debtor's exemption to the extent of $76,000.00, which is greater than the total amount of Pikes Peak's judicial lien, and Pikes Peak's judicial lien must be avoided in its entirety. *In re Kolich*, 328 F.3d 406 (8th Cir.2003); *In re Pepper, supra.*

■ Pikes Peak contends that this literal (it says "mechanical") application of § 522(f)(2)(A) makes no sense, under what it describes as the "unique" facts of this case, because there was non-exempt equity in the Property at the time its lien attached. Pikes Peak would have the Court determine the impairment of a debtor's exemption rights in the Property at the time of the attachment of a judicial lien, taking into account only the other liens on the Property *at that time*, then subtracting the exemption. If, under such a calculation, there were any equity in the Property at the time of attachment of the judicial lien, Pikes Peak contends that § 522(f) could not be later used to void it. Pikes Peak argues that its lien attached on July 9, 2003, the date it recorded its Writ of

Attachment. On that date, there were no other liens on the Property because Long Beach failed to record its March, 2003, deed of trust until July 10, 2003. Pikes Peak admits that when the Debtor filed bankruptcy, there was no equity in excess of the $45,000.00 Colorado homestead exemption in the Property. However, it argues that § 522(f) should not be utilized to avoid its lien "retroactively."

 The Court disagrees. "Retroactive" lien avoidance is exactly the consequence Congress intended when it enacted § 522(f). The clear import of the language of § 522(f)(2)(A) indicates that the state law priorities of the various liens have no impact on whether they can be avoided. *In re Kolich*, 328 F.3d 406 (8th Cir.2003). The only critical factors are the total amount of all liens on the property, the amount of the exemption and the value of the property, all as of the date of filing of the bankruptcy case. As the court stated in *In re Pepper, supra*, "[i]t appears that the intent was to seek to freeze the relative rights of the debtor and creditors *as of the date of the filing of the petition*." (emphasis added.)

The legislative history to § 522(f)(2)(A) reflects that Congress considered the exact situation at issue in this case—where the judicial lien sought to be avoided has priority under state law to an unavoidable consensual mortgage lien. In discussing the need for an amendment to define impairment, Congress noted several court decisions which "reached results that were not intended" by the drafters of § 522(f). One of these decisions, which Congress specifically intended to overrule, is the Third Circuit case of *In re Simonson*, 758 F.2d 103 (3rd Cir.1985). In *Simonson* the court held that a judicial lien could not be avoided in a case in which it was senior to a non-avoidable mortgage. Congress stated that § 522(f)(2)(A) was intended to

adopt the position of the dissent in *Simonson*. *See*, H. Rep. No. 835, 103rd Cong., 2d Sess. 52–54 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 3340.

As noted in the dissent in *Simonson*, the result now mandated by the plain language of § 522(f)(2)(A), "may work to the disadvantage of a judicial lienor who originally had a valid lien on property in which the debtor once had ample additional equity out of which to satisfy any homestead exemption in the event of bankruptcy." 758 F.2d at 112.

Despite the perceived unfairness of the result in a case such as the one at hand, this Court has applied § 522(f)(2)(A) exactly as the drafters intended-as a disruption of the lien priorities created by state law in favor of the Debtor's post-petition fresh start. *See, In re Kolich*, 328 F.3d 406 (8th Cir.2003).

Therefore, it is ORDERED that the lien of Pikes Peak on the Property is hereby VOIDED in its entirety, pursuant to 11 U.S.C. § 522(f).