**In re Raymond J. DOLAN and Toni I. Dolan, Debtors.**

**Raymond J. Dolan and Toni I. Dolan, Movants,**

v.

**D.A.N. Joint Venture, The Cadle Company, Federal Deposit Insurance Corporation as Receiver for Landmark Bank, Federal Deposit Insurance Corporation as Receiver for Community National Bank, Bank of Boston f/k/a Baybank of Connecticut, N.A., Mary Livingston–Roth, Ross Laboratories, A Division of Abbott Industries, Hartford Medical Labs, Avon Financial, LLC, Casa Investments Company, Georgia Receivables, Inc., First Union Bank of Connecticut FKA Centerbank, and Olsten Corporation, Respondents.**

**Bankruptcy No. 97–24371.**

United States Bankruptcy Court, D. Connecticut.

Jan. 27, 1999.

---

Thomas C. Boscarino, Boatman, Boscarino & Grasso, Glastonbury, CT, for the debtors/movants.

Paul N. Gilmore, Updike, Kelly & Spellacy, P.C., Hartford, CT, for respondent, The Cadle Company.

### MEMORANDUM OF DECISION ON MOTION TO AVOID JUDICIAL LIENS—110 WESLEYAN ROAD, GLASTONBURY, CONNECTICUT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I

#### Issue

In this proceeding, Chapter 7 joint debtors have filed a motion pursuant to Bankruptcy

Code (the "Code") § 522(f)(1) to avoid every judicial lien that encumbers their property as allegedly impairing their exemptions, regardless of whether a judicial lien is prior in right and senior to any unavoidable nonjudicial lien or whether the amount of such lien in excess of the debtor's exemption is a secured claim, based on the value of the property. The issue presented by the appearing parties requires proper construction of Code § 522(f)(1) following the 1994 legislative amendments to that section.[1] Those parties have stipulated to most of the following background.

## II

### *Background*

▮▮▮▮ Raymond J. Dolan ("Raymond") and Toni I. Dolan ("Toni") (together "the debtors") filed a joint Chapter 7 bankruptcy petition on October 10, 1997. The debtors jointly own their residence known as 100 Wesleyan Road, Glastonbury, Connecticut ("the property"). For the purposes of this proceeding, the appearing parties have agreed that the value of the property is $185,000. The debtors, in their bankruptcy petition, improperly did not set forth individual exemptions but instead they claimed a joint § 522(d)(1) exemption of $30,799.00 in the property. *See In re Stuart*, 31 B.R. 18 (Bankr.D.Conn.1983). (When spouses file a joint petition, separate estates will exist and each debtor should separately set forth assets, liabilities and claimed exemptions.) The court will construe the debtors' joint exemption claim as a $15,399.50 exemption

claim in the property for each debtor's interest.

The recorded encumbrances against the interest of each debtor in the property are listed in Exhibit A, attached hereto, jointly submitted by the debtors and The Cadle Company ("Cadle"), the only appearing creditor. Cadle's judgment lien of $414,406.36, it should be noted, lies only against Raymond's property interest.

## III

### *Parties' Contentions*

The debtors contend that under the formula expressed in Code § 522(f)(2)(A) ("the formula"), literally applied, they may avoid as impairing their exemptions every judicial lien regardless of whether it is secured by equity in the property and senior to unavoidable nonjudicial liens. They cite *In re Brantz*, 106 B.R. 62 (Bankr.E.D.Pa.1989) for the proposition that this court should deduct all liens not to be avoided from the value of the property, deduct the claimed exemptions and, if such deductions result in a negative figure, the formula dictates avoidance of every judicial lien. Raymond argues Cadle's judgment lien may thus be avoided since the unavoidable mortgage and tax lien deductions set out in Exhibit A, by themselves, vastly exceed the value of Raymond's interest in the property. Raymond relies on *Brantz* because the legislative history of the 1994 Bankruptcy Reform Act which added subsections (A) and (B) to § 522(f)(2) favorably referred to the *Brantz* holding.[2] 140 Cong.Rec. H10752–01, H10769 (1994).

> (B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in the making the calculation under subparagraph (A) with respect to other liens.

---

1. Section 522(f)(1), in pertinent part, permits a debtor to avoid the fixing of a judicial lien on a debtor's property "to the extent that judicial lien impairs an exemption to which the debtor would have been entitled ..." Subparagraphs (f)(2)(A) and (B), the 1994 amendments, provide:

(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
(i) the lien,
(ii) all other liens on the property; and
(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
exceeds the value of that the debtor's interest in the property would have in the absence of any liens.

2. "This amendment would provide a simple arithmetic test to determine whether a lien impairs an exemption based upon a decision, *In re Brantz*, 106 B.R. 62 (Bankr.E.D.Pa.1989), that was favorably cited by the Supreme Court in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 1838, n. 5, 114 L.Ed.2d 350." 140 Cong.Rec. H10752–01, H10769 (1994).

Cadle objects to the avoidance in full of its judgment lien and urges the court to permit Raymond to avoid Cadle's judgment lien only to the extent of his claimed $15,399.50 exemption and to permit Cadle's lien to retain its priority position under state law with regard to the balance of the lien. Cadle argues that the literal application of the formula to avoid its judgment lien in its entirety creates a windfall for the junior consensual and statutory lienholders; that any amount avoided in excess of the exemption benefits only junior lienholders, rather than the debtor, the intended beneficiary of the avoidance provisions of § 522(f). Cadle also relies upon another ruling favorably referred to in House Report 103–835–namely, the dissent in *In re Simonson*, 758 F.2d 103, 106–113 (3rd Cir. 1985)[3]. Cadle concedes, under the logic of the *Simonson* dissent, that Raymond may avoid Cadle's judgment lien to the extent of the $15,399.50 exemption, but contends that there is no basis to avoid the entire lien.

## IV

### *Discussion*

#### A.

The provisions of § 522(f) permitting a debtor to avoid judicial liens to the extent that they impair an exemption have been in the Code since 1978. The absence of a definition of the term "impair an exemption" resulted in a wide divergence of interpretations from court to court, prompting Congress to adopt a formula as part of the 1994 Amendments to the Code in order to overrule "several court decisions [which] have, in recent years, reached results that were not intended by Congress when it drafted the Code." 140 Cong.Rec. H10752–01, H10769 (1994).

The 1994 Amendments provided a "simple arithmetic test" designed to clarify Congress' intent to protect the debtor's "fresh start" from being encumbered by judicial liens secured only by post-petition increases in the debtor's equity. *Id.* To clarify its intent with

respect to the cases overruled by the amendment, Congress adapted the formula used by the court in *In re Brantz*, 106 B.R. 62 (Bankr.E.D.Pa.1989) to achieve the results intended. The legislative history discusses four particular scenarios where the Amendments were intended to overrule certain decisions. Under the first two scenarios, the formula permits the avoidance of judicial liens in their entirety where, after allowing for senior nonjudicial liens, a debtor has either no equity or equity less than the exemption amount. 140 Cong.Rec. H10752–01, H10769 (1994) (overruling *In re Gonzalez*, 149 B.R. 9 (Bankr.D.Mass.1993) and *In re Chabot*, 992 F.2d 891 (9th Cir.1993)). Under the third scenario, use of the formula clarified Congress' intent that "impaired" be defined in terms of the dollar amount of the lien, rather than by reference to its enforceability by execution sale under state law. 140 Cong.Rec. H10752–01, H10769 (1994) (overruling *In re Dixon*, 885 F.2d 327 (6th Cir.1989)). Finally, the legislative history referred to *In re Simonson*, 758 F.2d 103 (3d Cir.1985), noting briefly that the amendments adopted the position of the dissent.

The fact pattern in *Simonson* bears some resemblance to the facts of the present proceeding, and discussion of the dissent's position is relevant. In *Simonson*, the property was valued at $58,250, the debtor's exemption was $15,000, and the property was subject to the following encumbrances, in order from highest to lowest priority:

| | |
|---|---|
| First Mortgage | $ 25,145.95 |
| First Judgment Lien | 13,361.33 |
| Second Judgment Lien | 1,050.00 |
| Second Mortgage | 41,314.84 |
| Total | $ 80,872.12 |

Because the sum of the judicial liens ($14,-411.33) was less than the exemption to which the debtor would have been entitled ($15,-000), the dissent's position was that the judicial liens should have been avoided and the debtor permitted to step into the priority positions of the displaced liens. In the present proceeding, Cadle concedes that Ray-

---

**3.** "The amendment also overrules *In re Simonson*, 758 F.2d 103 (3d Cir.1985) in which the Third Circuit Court of Appeals held that a judicial lien could not be avoided in a case in which it was senior to a nonavoidable mortgage and the

mortgages on the property exceed the value of the property. The position of the dissent in that case is adopted." 140 Cong.Rec. H10752–01, H10769 (1994).

mond may avoid $15,399.50 of its judicial lien and that his homestead exemption to that extent may occupy the priority position of the displaced judicial lien. The court agrees that this would be consistent with the legislative intent of the 1994 Amendments.

### B.

■ The court rejects both Cadle's argument that the balance of its lien should be permitted to remain intact and Raymond's argument that Cadle's lien should be avoided in full. Although prior to the 1994 Amendments, this court, under certain circumstances, had allowed judgment liens prior to consensual liens to remain unavoidable, *see In re Fiore*, 27 B.R. 48 (Bankr.D.Conn.1983), *Fiore* has been superseded by the enactment of the 1994 Amendments, inasmuch as the *Simonson* dissent endorsed by Congress rejected the *Fiore* approach. *Simonson*, 758 F.2d at 109 (dissent). The question, then, is whether, under the 1994 Amendments, Congress intended to permit avoidance of the property interest of a senior judicial lienholder with prepetition equity in the property, for the benefit, not of the debtor, but of the holders of subordinate consensual and statutory liens; or whether the intent was to displace the judicial lien only for the benefit of the debtor. Since none of the scenarios discussed in the legislative history of the 1994 Amendments dealt with this situation, the court must consider which approach is more consistent with the Code policies and settled U.S. Supreme Court doctrines.

The First Circuit Bankruptcy Appellate Panel (the "BAP") has endorsed the former interpretation. *See FDIC v. Finn (In re Finn)*, 211 B.R. 780 (1st Cir. BAP 1997). In *Finn*, a homestead, valued at $225,000 was encumbered first by a judicial lien of $1,300,-000.00, then by a first mortgage of $66,-965.34, followed by a second mortgage of $87,932.00, and finally by a second judicial lien of $766,552.63. The debtor's exemption was $15,700.00. In the first step of its calculation, the BAP applied the formula to eliminate the second judicial lien of $766,552.63 in its entirety. When it then applied the formula to determine the extent to which the first judicial lien impaired the exemption, the

BAP eliminated the avoided second judicial lien from the calculation, but retained the two mortgages. This had the effect not only of stripping down the lien to the amount secured by the property value and then reducing it by the debtor's exemption (which would have left $209,300.00), but of further reducing it by the junior mortgages, leaving only $54,402.26 to remain unavoided. *Finn*, 211 B.R. at 783 n. 4.

■ The formula, as applied in *Finn*, undoes the prepetition state law priority order of the various liens, permitting a portion of the property value previously securing a judicial lien to be applied not only to the benefit of the debtor, but also to the benefit of junior nonjudicial lienholders. Except when Congress has acted to vary state law property rights for some bankruptcy purpose, the U.S. Supreme Court has held that the Code will not be construed to alter those rights. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent 'a windfall merely by reason of the happenstance of bankruptcy.' The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests...." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141 (1979) (quoting *Lewis v. Manufacturers Nat'l Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961)).

■ It is undisputed that § 552(f) was intended to protect the debtor's exemptions and provide a "fresh start," an acknowledged bankruptcy purpose. *United States v. Security Industrial Bank*, 459 U.S. 70, 72 n. 1, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) ("The exemptions were designed to permit individual debtors to retain exempt property so that they will be able to enjoy a 'fresh start' after bankruptcy."). Congress' avowed purpose in enacting the 1994 formula was to clarify its original intent under the previous version of

§ 522(f). 140 Cong.Rec. H10752–01, H10769 (1994). Nothing in the amendments or the legislative history indicates that Congress intended the formula to substantively alter existing property rights after the exemption was satisfied.

The U.S. Supreme Court has stated that it is a principle of statutory construction, that "[n]o bankruptcy law shall be construed to eliminate property rights which existed before the law was enacted in the absence of an explicit command from Congress." *Security Industrial Bank*, 459 U.S. at 81, 103 S.Ct. 407. The U.S. Supreme Court has interpreted § 522(f) not to apply retrospectively to permit avoidance of liens that arose prior to its original enactment in 1978 because the elimination of existing property rights raised "substantial doubts whether the retroactive application of the appellees' liens in these cases comports with the Fifth Amendment." *Security Industrial Bank*, 459 U.S. at 78, 103 S.Ct. 407. Cadle's lien arose after 1978 but before 1994. The question of a constitutional "taking," therefore, does not arise if the formula is interpreted as a clarification of the provisions of § 522(f) that were in effect when Cadle acquired its lien. If, however, it were interpreted to permit the avoidance of property interests not avoidable under the 1978 provisions, the court must consider whether such avoidance would violate the Fifth Amendment takings clause. The court must determine if it can interpret the formula in such a way that it clarifies, but does not expand, the scope of the original 1978 provisions. The U.S. Supreme Court has held that it is a "cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided." *Security Industrial Bank*, 459 U.S. at 78, 103 S.Ct. 407.

## C.

The court concludes that the avoiding of $15,399.50 of the "secured" portion of Cadle's judgment lien, and of the portion of the judgment lien in excess of the value of Ray-

4. For purposes of this calculation, the court has used 50% of the value of the jointly held property, the joint exemption claimed and any joint

mond's interest in the property are consistent with the original intent of the exemption provisions, protection of the debtor's exemptions and his "fresh start." *Security Industrial Bank*, 459 U.S. at 72 n. 1, 103 S.Ct. 407.

While the calculation prescribed in § 522(f)(2)(A) makes no explicit reference to the priority position of any of the liens included in the calculation, the iterative nature of the formula, as defined under § 522(i)(2)(B) for property subject to more than one lien, implicitly requires a determination of the relative priorities of at least the judicial liens. Since the formula is to be applied repeatedly, eliminating each lien previously avoided from the subsequent calculations, the order in which they are eliminated is material. Those rulings purporting to apply the formula literally implicitly recognize the priority order of liens established under state law—applying the formula consecutively, starting with the most junior of the judicial liens and avoiding one judicial lien (or part thereof) at a time, until the formula indicates no further impairment. *See, e.g. Finn*, 211 B.R. at 783; *Bank of America Nat'l Trust & Savings Ass'n v. Hanger (In re Hanger)*, 217 B.R. 592, 595 (9th Cir. BAP 1997) ("Applying the formula requires that the liens be subtracted in order of reverse priority . . .").

Since state law priority determines the order in which judicial liens be avoided, the court concludes, under the circumstances of this case, that the formula be applied to *exclude* junior nonavoidable liens in the computation of whether Cadle's judgment lien impairs Raymond's exemption, thereby avoiding the constitutional issue. The court applies the formula as follows, based on the encumbrances listed in Exhibit A.[4]

The first calculation yields the following:

| | | |
|---|---|---:|
| | Lowest Priority Judicial Lien | $ 5,280.92 |
| + | Sum of All Other Encumbrances Senior to Lien Above | + 2,414,548.14 |
| + | Debtor's Exemption | + 15,399.50 |
| − | Value of the Property | − 92,500.00 |
| | **Amount Impairing Exemptions** | **$2,342,728.56** |

liabilities of Raymond and Toni secured by liens on the property.

■ Since the calculation yields a positive result, the lowest priority judicial lien is avoided. The process is repeated, with each subsequent calculation excluding from consideration the liens previously avoided. After repeated application of the formula results in the avoidance in full of the judicial liens junior to Cadle's, the following calculation remains:

| Cadle's Lien, Lowest Priority Judicial Lien Remaining | | $ 414,406.36 |
|---|---|---|
| + Sum of All Other Encumbrances Senior to Cadle's Lien | + | 15,303.44 |
| + Debtor's Exemption | + | 15,399.50 |
| − Value of the Property | − | 92,500.00 |
| Amount Impairing Exemptions | | $ 352,609.30 |

Accordingly, $352,609.30 of Cadle's $414,406.36 judgment lien may be avoided, leaving Cadle with a lien on the property for the balance of $61,797.06.

## D.

With regard to the portion of the debtors' motion which seeks avoidance of judicial liens placed against Toni's interest in the property, as noted, no lienholder has appeared in opposition to the motion. The court determines that $14,023.99 [5] of the $75,000 judicial lien held by Livingston–Roth is avoided as impairing Toni's exemption and preserved for her benefit pursuant to § 522(i)(2). The balance of that lien and the full amount of all subsequent liens are avoided.

## V

### Conclusion

The court determines that $352,609.30 of Cadle's $414,406.36 judgment lien is hereby avoided, leaving Cadle with a lien on the property for the balance of $61,797.06; and that Raymond's exemption of $15,399.50 has a priority position immediately subsequent to that of the Cadle lien. All other judicial liens on Raymond's interest listed in Exhibit A are hereby avoided in their entirety.

All judicial liens on Toni's interest in the property are hereby avoided in their entirety; and $14,023.99 of Toni's exemption has a priority position equal to that of the avoided Livingston–Roth lien.

Separate orders as to for each debtor will enter avoiding such liens as have been dealt with in this ruling.

**IT IS SO ORDERED.**

### EXHIBIT A

| NAME OF CREDITOR | NATURE OF LIEN | VOLUME AND PAGE | RECORDING DATE | AMT DUE | PERSON (S) LIABLE H, W, or J |
|---|---|---|---|---|---|
| Town of Glastonbury | Tax Lien | 1038/336 | 10/9/96 | $138.00 | J |
| Webster Bank f/k/a Derby Savings Bank fka Burritt Mutual Savings Bank of New Britain | First Mortgage | 207/1059 | 7/24/75 | $27,412.41 | J |
| Fleet Bank, N.A., fka Connecticut National Bank fka Home Bank and Trust Company | Second mortgage | 338/869 | 12/29/86 | $3,056.49 | J |
| | Lis Pendens | 658/66 | 2/21/92 | N/A | J |
| D.A.N. Joint Venture, Assignee of The Cadle Company | Attachment | 439/248 & 249 | 8/18/88 | $400,000.00 | H |

5. Because 50% of the first three liens listed in Exhibit A are secured by Raymond's interest in the property, the calculations with regard to Toni's interest in the property use the remaining 50% of these liens and the full amount of the next joint lien since no equity remains in Raymond's interest.

| NAME OF CREDITOR | NATURE OF LIEN | VOLUME AND PAGE | RECORDING DATE | AMT DUE | PERSON (S) LIABLE H, W, or J |
|---|---|---|---|---|---|
| | Judgment lien | 552/119 | 6/1/90 | $414,406.36 | H |
| | Notice of Lis Pendens | 564/43 | 8/3/90 | N/A | H |
| MLQ Investors, L.P., Assignee of FDIC as Receiver for Community Savings Bank | Mortgage | 517/264 | 10/23/89 | $63,172.57 | J |
| FDIC as Receiver for Landmark Bank | Attachment | 519/56 | 10/31/89 | $185,000.00 | H |
| FDIC as Receiver for Landmark Bank | Attachment | 520/73 | 11/6/89 | $6,000.00 | H |
| | Judgment lien | 622/251 & 253 | 8/15/91 | $6,949.80 plus costs of $275.80 | H |
| FDIC as Receiver for Community National Bank | Attachment | 535/269 | 2/13/90 | $65,000.00 | H |
| | Judgment lien | 548/286 & 291 | 5/11/90 | $57,972.86 | H |
| Bank Boston fka Baybank Connecticut, N.A. | Attachment | 572/328 & 329 | 10/10/90 | $120,000.00 | H |
| | Judgment lien | 586/26 | 1/4/93 | $105,933.51 | H |
| Mary Livingston–Roth | Attachment | 577/13 & 14 | 11/5/90 | $75,000.00 | J |
| First Union Bank of Connecticut fka Center Bank successor-in-interest to Central Bank | Attachment | 627/123 & 124 | 9/17/91 | $200,000.00 | H |
| | Judgment lien | 715/331 | 10/6/92 | $818,510.30 plus costs of $1,067.20 | H |
| Ross Laboratories, a Division of Abbott Industries | Judgment lien | 647/330 | 1/8/92 | $7,638.05 | H |
| Fleet National Bank | Mortgage | 668/331 | 4/8/92 | $48,314.66 | J |
| Georgia Receivables, Inc. | Attachment | 906/122 | 10/26/94 | $115,000.00 | H |
| | Judgment lien | 1059/63 | 1/29/97 | $143,537.86 plus costs of $351.20 | H |
| | Judgment lien | 1069/307 | 4/1/97 | $131,537.47 | H |
| Hartford Med Laboratories, Inc. | Judgment lien | 921/219 | 1/30/95 | $1,157.00 | J |
| Avon Financial, LLC assignee of FDIC as Receiver for Central Bank | Judgment lien | 992/223 & 224 | 3/4/96 | $71,817.42 | J |

| NAME OF CREDITOR | NATURE OF LIEN | VOLUME AND PAGE | RECORDING DATE | AMT DUE | PERSON (S) LIABLE H, W, or J |
|---|---|---|---|---|---|
| | Notice of Lis Pendens | 997/318 | 4/4/96 | NA | J |
| Casa Investments Company | Judgment lien | 1006/203 | 5/13/96 | $95,453.28 | J |
| Internal Revenue Service | Federal tax lien | 1023/81 | 7/29/96 | $80,370.90 | J |
| Internal Revenue Service | Federal tax lien | 1023/83 | 7/29/96 | $308,238.38 | H |
| Town of Glastonbury | Sewer use lien | 1038/336 | 10/9/96 | $366.00 | J |