**In re Donald F. SMITH, Debtor.**

No. 04–10760–CJK.

United States Bankruptcy Court,
D. Massachusetts.

Sept. 30, 2004.

Nina M. Parker, Esq., Parker & Associates, Winchester, MA, for debtor.

David J. Reier, Esq., Seyfarth Shaw, Boston, MA, for Eagle Bank.

George R. Desmond, Esq., Framingham, MA, for Natick Federal Savings Bank.

Joseph G. Butler, Esq., Barron & Stadfeld, PC, Boston, MA, Chapter 7 Trustee.

## MEMORANDUM OF DECISION ON DEBTOR'S MOTION, AS AMENDED, TO AVOID JUDICIAL LIENS AND DETERMINE VALUE

HENRY J. BOROFF, Bankruptcy Judge.

By the amended motion before the Court[1], the Debtor, Donald F. Smith, has moved under 11 U.S.C. § 522(f) to avoid all but $10,668.73 of Eagle Bank's $355,000 attachment on his home; the Debtor contends that the balance of the attachment is a judicial lien that impairs his homestead exemption. Eagle Bank concedes that its attachment is a judicial lien that impairs the Debtor's exemption but contends that the portion of its attachment that does not impair the homestead exemption, and that therefore may not be avoided, is $55,000. Their disagreement boils down to one issue: whether an unrecorded mortgage over which Eagle Bank's attachment would have priority under state law may be counted as an "other lien on the property" within the meaning of § 522(f)(2)(A)(ii) for purposes of determining the extent of impairment. For the reasons set forth below, the Court holds that it may so be counted and, therefore, that Eagle Bank's attachment should be avoided to the extent requested by the Debtor.

## I. FACTS AND PROCEDURAL HISTORY

The Debtor and his wife, who did not join in this bankruptcy filing, own and reside in real estate located at 7 Lewis Drive, Medway, Massachusetts ("the Property"). They own the Property as tenants by the entirety. The Debtor recorded a declaration of homestead as to the Property on July 30, 2002, pursuant to Massachusetts law, G.L. c. 188, § 1. On February 2, 2004, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code, thereby commencing this case. He claimed the Property exempt to the extent of $300,000. No one has objected to the claim of exemption, and the time to object has expired.

At the time of case commencement, the Property had a fair market value of $355,-000[2] and was subject to two encumbrances. The first in time was a mortgage in favor of Natick Federal Savings Bank ("Natick Federal"), securing a debt in the amount of $44,331.27. The Debtor and his wife had given this mortgage to Natick Federal on March 26, 1998, but Natick Federal did not record it. The second encumbrance was a writ of attachment in favor of Eagle Bank against the Debtor's interest in the Property[3] in the amount of $355,000. Eagle Bank obtained this writ of attachment from the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts on April 7, 2003, and recorded the attachment.

---

1. This Court sits in this matter by designation under Massachusetts Local Bankruptcy Rule 5001–1(d).

2. The parties initially disagreed as to fair market value—the Debtor alleged $350,000 and Eagle Bank $360,000—but have now agreed on a compromise figure of $355,000.

Transcript of Hearing of July 16, 2004, at pages 3 and 5; Debtor's Motion to Amend, ¶ 4.

3. Eagle Bank's attachment does not attach to the wife's interest in the Property.

After filing his bankruptcy petition, the Debtor filed the motion now under consideration, entitled "Motion of Debtor to Avoid Judicial Liens [sic] and to Determine Value." The motion asks the Court to avoid $325,000 of Eagle Bank's $355,000 attachment,[4] which would leave a continuing lien of only $30,000. In the motion, the Debtor contends that the value of the Property is $350,000. And, in calculating the extent of impairment under § 522(f)(2)(A), he included only one "other lien on the Property" under § 522(f)(2)(A)(ii), that being the lien in favor of Natick Federal; the Debtor quantifies this lien at $20,000.00, stating that this represents the "non-debtor spouse's interest only."[5] Given a $350,000 value, a $20,000 unavoidable lien, and a $300,000 homestead exemption, the Debtor calculated that only $30,000 of the Eagle Bank lien does not impair his exemption.

In its opposition to the motion, Eagle Bank agreed that, to a large extent, its lien impaired the Debtor's homestead exemption and therefore was properly subject to avoidance under § 522(f). Eagle Bank took issue only with two factors in the Debtor's calculation of the extent of impairment. First, Eagle Bank maintained that fair market value was $360,000, $10,000 higher than the Debtor's valuation. And second, Eagle Bank argued that the Natick Federal mortgage, being unrecorded and therefore junior in priority to Ea-

gle Bank's attachment under state law, cannot be counted in the computation required by § 522(f)(2)(A) to determine the extent of impairment. Eagle Bank argues that junior consensual liens are not counted in determining whether a senior judicial lien impairs an exemption, because doing so would violate state priority rules and raise constitutional questions.[6] Eagle Bank also states that, because Massachusetts is a notice state, it is doubtful that the unrecorded mortgage of Natick Federal even constitutes a lien at all within the meaning of the Bankruptcy Code's definition.

At the hearing on the motion, the Debtor and Eagle Bank indicated that they had resolved their difference regarding the value of the Property by settling on an agreed value of $355,000. They also agreed that the sole remaining issue was one of law and involved no issues of material fact. At the conclusion of the hearing, the Debtor moved to amend his motion by including the whole of Natick Federal's lien in the calculation of impairment; in the original motion, the Debtor had included only half. The Court ordered the Debtor to make the motion in writing. Eagle Bank objected to the amendment, stating that the basis of amendment was not an unexpected factual development but a change in the Debtor's view of the governing law. Eagle Bank, however, stated that it would rely on its oral objection and

---

**4.** In his motion, the Debtor refers to Eagle Bank's judicial lien as a writ of execution. Eagle Bank has clarified that the lien in question is a writ of attachment.

**5.** The $20,000 figure is an approximation of one-half of the obligation to Natick Federal. The amount of the Natick Federal debt at the time of the filing was $44,331.27; half of that debt would be $22,165.34. In the motion, the Debtor explained that "[t]he Debtor's portion of that obligation has not been included in the analysis as the [Natick Federal] Mortgage was

not perfected as to the interested parties involved in the Debtor's bankruptcy matter."

**6.** For this proposition, Eagle Bank cites *In re Radcliffe*, 278 B.R. 426, 428 (Bankr.W.D.Ky. 2002) (junior nonavoidable liens excluded from calculation) and *In re Dolan*, 230 B.R. 642, 647 (Bankr.D.Conn.1999) ("Since state law priority determines the order in which judicial liens be avoided, ... the formula [is to] be applied to *exclude* junior nonavoidable liens in the computation") (emphasis in original).

would not be filing a written opposition to Debtor's motion to amend; the Court indicated that Eagle Bank could rely on its oral objection.

The Debtor did file a motion to amend, entitled "Motion of Debtor to Amend Prayers for Relief in Connection with the Debtor's Motion to Avoid Judicial Liens and To Determine Value." The motion asks that the Court avoid all but $10,668.73 of Eagle Bank's attachment. It differs from the original by (1) incorporating the agreed value of $355,000 and (2) using the whole of Natick Federal's mortgage lien in calculating the amount of Eagle Bank's lien that impairs Debtor's homestead exemption. The motion states that the Natick Federal mortgage should not be apportioned between the Debtor and his non-debtor spouse. Eagle Bank filed no further response to the motion.

## II. DISCUSSION

### A. The Motion to Amend

■ Eagle Bank has objected to the motion to amend but has neither demonstrated that it would be prejudiced by the amendment nor argued that the proposed amendment is improper as a matter of substantive law.[7] The only basis of objection is that the amendment was not based on newly discovered facts or evidence, but simply on Debtor's counsel's eleventh-hour realization that the law permitted her to ask for more than she had originally thought she could.

Though FED. R. CIV. P. 15 does not apply to this contested matter, it is designed to govern amendment of pleadings and therefore is instructive here. Under this rule, the Court "shall ... freely" allow plead-

ings to be amended to conform to the evidence "if the presentation of the merits of the action will be subserved thereby," provided only that "the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits." FED. R. CIV. P. 15(b). Plainly, the presentation of the merits of the present action will be subserved by the proposed amendment; amendment would permit the Court to consider relief to which, if the Court rejects Eagle Bank's objection on the merits, the Debtor is entitled on the agreed facts. Eagle Bank does not contend otherwise. Nor has it alleged that the amendment would prejudice its defense on the merits. Absent prejudice to Eagle Bank, the Court sees no cause to deny leave to amend. The motion to amend will be allowed.

### B. The Motion to Avoid Lien (as Amended)

Section 522(f) of the Bankruptcy Code permits a debtor to "avoid the fixing of a lien on an interest of the debtor in property *to the extent that such lien impairs an exemption* to which the debtor would have been entitled under subsection (b) of this section." 11 U.S.C. § 522(f)(1) (emphasis added). One determines the extent to which a lien impairs an exemption by application of the formula in § 522(f)(2)(A):

For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

---

7. Eagle Bank argues that none of the lien may figure into the calculation. But, even in response to the motion to amend, it does not argue that, if the lien is appropriately considered, consideration should be limited to the half attributable to the non-debtor spouse (assuming only half is so attributable).

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A). The parties agree now on all but one of the components of this formula. The Debtor contends that the Natick Federal mortgage is an "other lien on the property" within the meaning of § 522(f)(2)(A)(ii). Eagle Bank contends that the Natick Federal mortgage is not a "lien" at all, and that, if it is a lien, it is junior under state law and therefore should not be counted as an "other lien on the property" within the meaning of § 522(f)(2)(A)(ii).

### 1. *Unrecorded Mortgage as "Lien"*

■ The Court begins with the issue of whether the Natick Federal mortgage is a lien within the meaning of § 522(f). Throughout the Bankruptcy Code, "lien" means "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Eagle Bank contends that, because the mortgage was unrecorded, it cannot be asserted against Eagle Bank, and therefore does not constitute a lien. The Debtor, on the other hand, contends that even an unperfected security interest is valid as between the Debtor and the mortgagee.

■ The definition of lien is a matter of federal law, but the issue of whether a particular mortgage is a "charge against or interest in property to secure payment of a debt," as the Debtor maintains, is one of state law.[8] *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In Massachusetts, a mortgage deed gives the mortgagee an interest in land to secure the payment of money or the performance of an obligation.[9] Failure to record the mortgage does not affect the validity of the deed as against the grantor. G.L. c. 183, § 4 ("A conveyance of an estate in fee simple ... shall not be valid as against any person, *except the grantor* ... unless it ... is recorded in the registry of deeds for the county or district in which the land to which it relates lies." (emphasis added)). Therefore, under Massachusetts law, an unrecorded mortgage, though unenforceable against third parties without actual knowledge, is nonetheless valid and enforceable as against the mortgagor. It follows that even an unrecorded mortgage is "an interest in property to secure payment of a debt" and thus a lien within the meaning of §§ 101(37) and 522(f) of the Bankruptcy Code.

### 2. *Junior Lien as "Other Lien on the Property"*

■ The next issue is whether a lien that, under state law, would be junior to the lien that the Debtor is seeking to avoid

---

**8.** The Property being located in Massachusetts, the applicable law is that of the Commonwealth of Massachusetts. Both parties cite exclusively to Massachusetts law.

**9.** G.L. c. 183, §§ 18 and 19; *Pineo v. White,* 320 Mass. 487, 489, 70 N.E.2d 294 (1946) ("A mortgage of real estate is, as between the parties, a conveyance in fee, defeasible upon the performance of the conditions therein stated."); *Perry v. Miller,* 330 Mass. 261, 263, 112 N.E.2d 805 (1953) ("A 'mortgage' of real estate is a conveyance of title or some interest

therein defeasible upon payment of money or performance of some other condition."); *Atlantic Savings Bank v. Metropolitan Bank and Trust Co.,* 400 N.E.2d 1290, 9 Mass.App.Ct. 286 (1980) (Under Massachusetts' title theory, a mortgage written in the statutory short form and containing apt words of grant with mortgage covenants, constituted a deed of conveyance which transferred a fee interest to the bank, defeasible upon the performance of the conditions stated therein.).

may be included as an "other lien on the property" within the meaning of § 522(f)(2)(A)(ii). Eagle Bank contends that junior nonavoidable liens should be excluded from the calculation. In support of this position, Eagle Bank relies on *In re Radcliffe,* 278 B.R. 426, 428 (Bankr. W.D.Ky.2002) (junior nonavoidable liens excluded from calculation) and *In re Dolan,* 230 B.R. 642, 647 (Bankr.D.Conn. 1999) ("Since state law priority determines the order in which judicial liens be avoided, ... the formula [is to] be applied to *exclude* junior nonavoidable liens in the computation") (emphasis in original).

The Court begins with the language of the statute, which plainly and unambiguously requires that the extent of impairment be calculated by adding in *"all* other liens on the property." 11 U.S.C. § 522(f)(2)(A)(ii) (emphasis added). It does not distinguish between senior liens and junior liens, between those having greater and lesser priority under state law. Moreover, the statute is quite specific as to which types of liens may be avoided and which may not. See 11 U.S.C. § 522(f)(1) (permitting avoidance only of certain judicial liens and certain nonpossessory, non-purchase-money security interests) and § 522(f)(2)(C) (expressly excluding judgments arising from mortgage foreclosure). Congress thus clearly intended that, in permitting a debtor to avoid liens impairing exemptions, some types of liens would be treated differently than others; some would be protected from avoidance, others not. Though Congress went to some length to distinguish those that could be avoided from those that would be protected, it gave no special protection to judicial liens that are senior to unavoidable mortgages.

Moreover, Congress then went on to clarify that, where property is subject to more than one lien, a lien that has already been avoided shall not be considered in the calculation mandated by § 522(f)(2)(A) with respect to other liens. 11 U.S.C. § 522(f)(2)(B). Congress was thus mindful of the need to enumerate the types of liens that should not be included in the calculation of impairment, and in doing so it excluded only those that have already been avoided—that is, those which are no longer liens. It did not instruct the Court to exclude junior unavoidable liens, and this does not appear to have been for lack of attention to detail. *In re Kolich,* 328 F.3d 406, 410 (8th Cir.2003) ("This problem may not be dismissed as a mere 'quirk in drafting,' because it would have been relatively easy to draft § 522(f)(2)(A)(ii) to exclude such junior consensual liens from the phrase 'all other liens on the property.'"). Rather, Congress instructed that the formula for calculating impairment should include "all other liens." Where Congress addressed the question of which liens were to be excluded from the calculation, the Court cannot disregard the words "all other liens" in § 522(f)(2)(A)(ii) without strong evidence of contrary intent.

The legislative history, too, tends to confirm that Congress intended *not* to protect the state law priority of judicial liens over nonavoidable consensual liens. Prior to 1994, § 522(f) permitted a debtor to avoid certain liens that impaired exemptions, but it provided no guidance as to when a lien impaired an exemption, and the cases diverged widely on the issue. See *In re Witkowski,* 176 B.R. 114, 116–17 (Bankr. D.Mass.1994). In the Bankruptcy Reform Act of 1994, Congress addressed this problem by inserting into § 522(f) the mathematical formula set forth in § 522(f)(2)(A), the formula now in question. The House Report on the 1994 Act states that Congress intent in promulgating this formula was to overrule several decisions, including one pertinent to the present issue:

The amendment also overrules *In re Simonson*, 758 F.2d 103 (3rd Cir.1985), in which the Third Circuit Court of Appeals held that a judicial lien could not be avoided in a case in which it was senior to a nonavoidable mortgage and the mortgages on the property exceeded the value of the property. The position of the dissent in that case is adopted. HR Rep. 103–834, 103rd Cong., 2nd Sess. 35–37 (October 4, 1994), U.S.Code Cong. & Admin.News 1994, pp. 3343–46; 140 Cong Rec. H10769 (Oct. 4, 1994). By overruling *Simonson* and adopting the position of the dissent, Congress indicated clearly its intention not to protect the state-law priority of judicial liens over junior consensual liens.

In the two cases on which Eagle Bank relies, the courts nonetheless found in § 522(f)(2)(A)(ii) an implicit exclusion of junior liens. See *In re Dolan*, 230 B.R. 642, 646–647 (Bankr.D.Conn.1999) (junior nonavoidable lien should be excluded from the computation of impairment) and *In re Radcliffe*, 278 B.R. 426 (Bankr.W.D.Ky. 2002) (same, following *Dolan*). The *Dolan* court's conclusion was based on four discrete reasons.[10] The Court will address each in turn.

■ The first concerns the continuing validity of state law rights in bankruptcy: a bankruptcy statute should not be construed to alter state law property rights, including a senior lien's priority over junior liens, unless Congress has explicitly altered such rights for bankruptcy purposes. *In re Dolan*, 230 B.R. at 646–647.

The Court agrees with this principle but holds that it provides no cause to exclude a junior nonavoidable lien from the calculation of impairment. In § 522(f), Congress *has* explicitly altered state law property rights for a bankruptcy purpose: to enhance the debtor's fresh start by permitting the debtor to avoid judicial liens.[11]

The second concern in *Dolan* was constitutional: § 522(f) must be construed to avoid its effecting an abrogation of property rights that would violate the Fifth Amendment takings clause. *Id.* at 647. That concern has been addressed in this Circuit. The First Circuit Court of Appeals has held that where the lienholder's lien rights were circumscribed from their inception by the Debtor's ability under the Bankruptcy Code to avoid the lien, the prospective application of § 522(f) did not constitute a "taking" of the lienholder's property interest within the meaning of the Fifth Amendment Takings Clause. *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677, 685–686 (1st Cir. 1999). Eagle Bank obtained its attachment in 2003, long after the enactment in 1978 of § 522(f), and even after Congress's amendment of that subsection with the formula now at issue in 1994. The attachment does not antedate, but rather was created subject to, the law that enables the Debtor now to avoid the lien. Therefore, the application of § 522(f) to this lien raises no constitutional concern.

The third reason discussed in *Dolan* goes to the purpose of § 522(f): that avoidance of a judicial lien that is senior to

---

**10.** The *Radcliffe* decision cited and quoted from *Dolan* but added nothing to its reasoning. Moreover, in *Radcliffe*, the proposition in question was unnecessary to the decision, the court having already concluded that the lien in question was excluded from the calculation of impairment by virtue of its being a statutory lien.

**11.** *In re Kolich*, 328 F.3d 406 (8th Cir.2003) ("To be sure, the Bankruptcy Code usually looks to state law to define the property rights and priorities of creditors, including secured creditors. But § 522(f) is an exception to that policy. It was enacted to permit the avoidance of judicial liens that can interfere with the debtor's post-petition fresh start.")

a nonavoidable lien frees up equity for the benefit of the nonavoidable lien and, to the extent it does so, does not serve Congress's ostensible purpose of un-impairing the debtor's exemption; rather, it only elevates the junior lien at the expense of the senior. *Id.* at 646. For purposes of argument, the Court does not dispute that § 522(f) can have this effect.[12] The fact that § 522(f) may operate in this manner, however, is not cause to construe § 522(f) to exclude the junior lien from the calculation of impairment. The question is whether this effect is so at odds with the ostensible purpose of § 522(f) that it cannot have been what Congress intended. Plainly it is not so at odds with the purpose of this statute. The purpose of this statute is to further the debtor's fresh start by freeing ("unimpairing") the debtor's exemptions from the burden of judicial liens. By avoiding judicial liens that are senior to unavoidable liens, the statute furthers that purpose. It does not further the purpose as much as it would if there were no junior unavoidable liens, but it does still further the purpose. More importantly, the statute better serves the purpose of unimpairing the exemption when the amount of the junior unavoidable lien is included in the calculation (as the statute expressly requires) than it would if that lien were excluded. In this case, for example, exclusion of the junior lien would leave the Property burdened with $44,331.27 more debt than would inclusion. Inclusion of the junior lien is thus more consistent with the purpose of the statute than exclusion of the lien.

In addition, as the Eighth Circuit Court of Appeals held in a decision squarely on point, inclusion of the junior lien advances the statutory purpose in another way:

> This selective avoidance gives an advantage under federal law to secured creditors holding consensual liens, typically, residential mortgage lenders. But Congress intended to treat consensual lienholders more favorably, because their contractual relationships with the bankruptcy debtor typically allow the debtor to acquire equity in the exempt property by making post-petition mortgage payments. The 1994 amendment creating the statutory formula here at issue was expressly aimed at overruling prior judicial decisions compromising that intent.

*In re Kolich,* 328 F.3d at 410 (8th Cir. 2003). In other words, Congress had its reasons for leaving even junior consensual liens in place, and those reasons are not wholly at odds with furtherance of the Debtor's fresh start. Though junior consensual liens may continue to impair equity freed by avoidance of judicial liens, the consensual liens, by virtue of having been planned and agreed to, are liens a debtor is more likely to be able to service and, over time, pay down. Avoidance of the judicial liens makes it worthwhile for the debtor to do so and, in that way, furthers the Debtor's fresh start. For these reasons, this Court concludes that the effect of including the junior consensual lien in the calculation of impairment is not inconsistent with the purpose of § 522(f) and gives no cause to disregard the plain language of the statute.

The fourth reason discussed in *Dolan* is based on the iterative nature of § 522(f)(2)(B),[13] the requirement that a

---

12. No ruling is made on that issue here. In *In re Dolan,* 230 B.R. at 645–646, the court stated that it would be consistent with the legislative intent of the 1994 amendments to § 522(f) for the Debtor's homestead exemption to step into the priority position of the displaced judicial lien. This would give the exemption priority over the junior consensual lien and prevent that lien from consuming the equity freed by avoidance of the judicial lien.

13. Section 522(f)(2)(B) states: "In the case of a property subject to more than 1 lien, a lien

lien that has already been avoided shall not be considered in the calculation mandated by § 522(f)(2)(A) with respect to other liens. The *Dolan* court found in this requirement a Congressional intent to respect state law priorities in the order in which liens are to be avoided, always avoiding the most junior of the remaining liens, and extrapolated from this intent a further intent to exclude junior nonavoidable liens from the computation of impairment. *Id.* at 647. This Court can not locate those intentions in the statute, and believes that the purpose of § 522(f)(2)(B) is really quite uncomplicated: that is, to prevent counting something no longer there. And, even if § 522(f)(2)(B) did mandate that state law priority be followed with respect to the order in which avoidable liens are to be avoided, it would still stop far short of excluding junior unavoidable liens from the calculation of impairment.

For these reasons, this Court respectfully disagrees with *Dolan* and, following the Eighth Circuit Court of Appeals in *In re Kolich*, 328 F.3d at 410 (8th Cir.2003), concludes that the statute should be applied as written. Accordingly: the sum of Eagle Bank's lien ($355,000), all other liens on the Property ($44,331.27), and the amount of the homestead exemption that the debtor could claim if there were no liens on the Property ($300,000) is $699,331.27, which sum exceeds the value that the Debtor's interest in the Property would have in the absence of liens on the Property ($355,000) by $344,331.27. This is the extent to which Eagle Bank's attachment may be avoided, leaving a remaining attachment of $10,668.73 [$355,000—$344,331.27 = $10,668.73]. A separate order shall enter allowing the motion to amend and avoiding the attachment of Eagle Bank to the extent of $344,331.27.

### ORDER ON DEBTOR'S MOTION, AS AMENDED, TO AVOID JUDICIAL LIENS AND DETERMINE VALUE

The Debtor having moved to avoid the $355,000 attachment of Eagle Bank (recorded at Norfolk County Registry of Deeds, in Book 1831, page 54) on the real property belonging to the Debtor, Donald Smith, and his wife and located at 7 Lewis Drive, Medway, Massachusetts: and, for the reasons set forth in the separate memorandum of decision issued today, the Court having ruled that the motion should be allowed as requested,

It is hereby ORDERED and AD-JUDGED that the Debtors' Motion to Avoid the Judicial Liens is ALLOWED and that the above-described attachment of Eagle Bank on the Debtor's interest in the property is avoided in part and reduced to the amount of $10,668.73.

### ORDER ON MOTION OF DEBTOR TO AMEND PRAYERS FOR RELIEF IN CONNECTION WITH THE DEBTOR'S MOTION TO AVOID JUDICIAL LIENS AND TO DE-TERMINE VALUE

For the reasons set forth in the separate memorandum of decision issued today on the Debtor's Motion to Avoid Judicial Liens and Determine Value, the Motion of Debtor to Amend Prayers for Relief in Connection With the Debtor's Motion to Avoid Judicial Liens and to Determine Value is hereby allowed.

that has been avoided shall not be considered in making the calculation under subpara-graph (A) with respect to other liens." 11 U.S.C. § 522(f)(2)(B).