# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1829

_____

| | | |
|---|---|---|
| In re: Dean Allen Kolich; Michelle Rene Kolich, | * | |
| | * | |
| | * | |
| Debtors. | * | |
| ------------------------------------------------ | * | |
| Dean Allen Kolich; Michelle Rene Kolich, | * | Appeal from the United States |
| | * | Bankruptcy Appellate Panel |
| | * | for the Eighth Circuit. |
| Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| Antioch Laurel Veterinary Hospital, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 14, 2003

Filed: May 2, 2003

_____

Before LOKEN,[*] BYE, and RILEY, Circuit Judges.

_____

LOKEN, Chief Judge.

_____

[*]The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

Section 522(f)(1) of the Bankruptcy Code provides that the debtor may avoid most judicial liens "to the extent that such lien impairs an exemption to which the debtor would have been entitled." 11 U.S.C. § 522(f)(1). In this case, Chapter 7 debtors Dean and Michelle Kolich moved to avoid a judicial lien on their homestead held by Antioch Laurel Veterinary Hospital ("Antioch"). Applying the formula for determining when a lien impairs an exemption in § 522(f)(2)(A), the Eighth Circuit Bankruptcy Appellate Panel ("BAP") concluded that the homestead exemption was impaired and avoided Antioch's lien in its entirety. In re Kolich, 273 B.R. 199 (8th Cir. B.A.P. 2002), rev'g 264 B.R. 544 (Bankr. W.D. Mo. 2001). Antioch appeals, arguing that the BAP's "mechanical application" of the statutory formula produces an absurd result and an unjust windfall to a junior secured creditor and the bankruptcy debtors. Like the BAP, we review the bankruptcy court's interpretation of the statute de novo. In re Vote, 276 F.3d 1024, 1026 (8th Cir. 2002). We affirm.

Section 522(f) was enacted when Congress rewrote the Code's exemption provisions in the Bankruptcy Reform Act of 1978. Recognizing that exemptions are critical to providing the bankruptcy debtor a "fresh start" and that state exemption laws were often inadequate for this purpose, Congress created alternative federal exemptions in § 522(b) and (d) and then added § 522(f) to permit the debtor to avoid judicial liens that impair exempt property. This avoidance power "allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy." H.R. Rep. No. 95-595, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6087. Initially, § 522(f) did not define when a judicial lien impairs an exemption, which led to a variety of inconsistent judicial interpretations. In 1994, Congress added the formula in § 522(f)(2)(A), intending to bring order out of the prior chaos. Unfortunately, as this case illustrates, the formula has itself generated inconsistent judicial interpretations.

The relevant facts are undisputed and may be quickly summarized. (For convenience, we round all values to the nearest $1,000.) The Kolichs purchased their

homestead in 1998, borrowing much of the purchase price and giving the World Savings Bank ("WSB") a first mortgage on the home as security for its loan. In the fall of 2000, Antioch obtained a $134,000 judgment against the Kolichs and recorded the judgment as a judicial lien against their homestead. In December 2000, the Kolichs borrowed $80,000 from Norbank, giving Norbank a second mortgage on their homestead to secure its loan. Under state law, as between these secured creditors, WSB had the first priority interest in the homestead, Antioch's judicial lien had the second priority interest, and Norbank's junior lien had the third priority interest.[1] When Antioch began proceedings to collect its judicial lien in the spring of 2001, the Kolichs commenced this Chapter 7 proceeding. At that time, the homestead's fair market value was $275,000, the WSB loan had an outstanding balance of $219,000, and both Antioch's judgment and the Norbank loan were unpaid. Missouri allows a homestead exemption of $8,000. See Mo. Rev. Stat. § 513.475(1).

After filing their Chapter 7 petition, the Kolichs moved to avoid Antioch's judicial lien under § 522(f)(1), arguing that the lien impairs their homestead exemption. That motion turns on the proper application of the formula defining an impairment set forth in § 522(f)(2)(A):

> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of --
>
> > (i)   the [judicial] lien;
> > (ii)  all other liens on the property; and
> > (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

---

[1]Norbank failed to discover Antioch's judicial lien before making its loan.

Applying the formula to this case, if the term "all other liens" in subsection (2)(A)(ii) is construed literally, as the BAP concluded, then Antioch's entire judicial lien must be avoided because the impairment exceeds the value of its lien. That is, the sum of the judicial lien ($134,000), the two mortgage liens ($299,000), and the homestead exemption ($8,000) is $441,000, which exceeds the Kolichs' $275,000 interest in the property in the absence of any liens by $166,000, more than the total value of the judicial lien. On the other hand, the bankruptcy court concluded that Norbank's lien should be excluded in applying the formula because it is junior to Antioch's lien under state law. Excluding the Norbank lien reduces the impairment from $166,000 to $86,000, which means that only $86,000 of Antioch's judicial lien is avoided, while the remaining $48,000 remains an unavoided lien on the Kolichs' homestead.[2] On appeal, Antioch urges us to adopt the bankruptcy court's interpretation of § 522(f)(2)(A) rather than the BAP's.

As this is a statutory formula, we begin, as we must, with the language of the statute. Antioch concedes that the BAP's ruling is consistent with a literal application of the statutory formula. We agree with Antioch's reading of the statute's plain meaning.[3] But the concession leaves Antioch with a decidedly uphill battle. "The plain meaning of legislation should be conclusive, except in the rare cases in which

---

[2]Under § 522(f), only the portion of a judicial lien that impairs the exemption may be avoided by the debtor. Thus, to the extent the debtor has equity in the exempt property that exceeds the allowed bankruptcy exemption, the judicial lien may not be avoided. See In re Silveira, 141 F.3d 34, 36-38 (1st Cir. 1998).

[3]The bankruptcy court reasoned that the word "liens" in § 522(f)(2)(A)(ii) should not include junior liens on over-encumbered property that are wholly "under water" because, "in bankruptcy parlance, a lien which is secured by no value at all is considered to be an unsecured claim, and not a lien at all." 264 B.R. at 550 n.28. But that parlance is not reflected in the Code's definition of a lien: "'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). We find no indication that Congress intended a different definition of "liens" in § 522(f)(2)(A)(ii).

-4-

the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) (quotation omitted).

Antioch's contention becomes more tenable when we take into account that a number of courts have declined to apply the statutory formula literally in another frequently litigated context. When a debtor has only a fifty percent interest in exempt property -- usually, a homestead jointly owned with a spouse who did not join in the bankruptcy petition -- but one or more of the outstanding liens apply to the entire property, the statutory formula produces an unreasonably high impairment that has the effect of *creating* additional equity for the debtor at the expense of the lienholder whose lien is thereby avoided. Most courts faced with this situation have refused to apply the formula literally, instead refashioning it to achieve a more realistic computation of the impairment. As the First Circuit said after concluding that the formula literally applied would produce an unintended measure of lien avoidance, "[c]ourts are not required to follow literal language where it would produce an outcome at odds with the purpose of Congress and where the result stems merely from an unintended quirk in drafting." Nelson v. Scala, 192 F.3d 32, 35 (1st Cir. 1999); accord In re Lehman, 205 F.3d 1255 (11th Cir. 2000); In re Ware 274 B.R. 206 (Bankr. D.S.C. 2001). But see In re Cozad, 208 B.R. 495 (10th Cir. B.A.P. 1997) (applying formula literally even in this situation).

On appeal, Antioch cites Nelson and Lehman and urges us to apply their reasoning to this case. But the issues are dissimilar. Here, the problem is not created by the formula's mathematical progression, as it was in those cases. Rather, the issue is whether "all other liens" in subsection 522(f)(2)(A)(ii) includes consensual liens junior to the judicial lien at issue. Or, to state the issue more broadly, the question is whether Congress intended that this statutory formula disrupt lien priorities created by state law, for if Antioch's second priority lien is avoided, the primary beneficiary is Norbank, whose third priority consensual lien was junior to Antioch's lien under

state law but may not be avoided under § 522(f). This problem may not be dismissed as a mere "quirk in drafting," because it would have been relatively easy to draft § 522(f)(2)(A)(ii) to exclude such junior consensual liens from the phrase "all other liens on the property." To our knowledge, no circuit court has considered this issue. The few bankruptcy courts to consider the issue have reached inconsistent decisions.

Having carefully considered these conflicting precedents, we find no sufficient basis for concluding that the statutory formula produces, in this situation, a result "demonstrably at odds with the intentions of its drafters." To be sure, the Bankruptcy Code usually looks to state law to define the property rights and priorities of creditors, including secured creditors. But § 522(f) is an exception to that policy. It was enacted to permit the avoidance of judicial liens that can interfere with the debtor's post-petition fresh start. This selective avoidance gives an advantage under federal law to secured creditors holding consensual liens, typically, residential mortgage lenders. But Congress intended to treat consensual lienholders more favorably, because their contractual relationships with the bankruptcy debtor typically allow the debtor to acquire equity in the exempt property by making post-petition mortgage payments. The 1994 amendment creating the statutory formula here at issue was expressly aimed at overruling prior judicial decisions compromising that intent. See H.R. Rep. No. 103-835, at 52-54 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3361-63; In re Holland, 151 F.3d 547, 549-51 (6th Cir. 1998).

We are not entirely comfortable with the equities of literally applying the statutory formula in this situation. It may give a debtor contemplating bankruptcy the ability to wipe out judicial liens by persuading a lender to take an otherwise junior consensual lien that renders the exempt property over-encumbered and therefore ripe for impairment. One would expect lenders to refuse to make such high-risk loans, but there may be times when self-interest or hard-to-detect collusion will lead to an abuse of § 522(f). On the other hand, refusing to apply the statutory formula as written may result in denying deserving debtors the fresh-start advantage § 522(f) was enacted to

provide -- for example, if a drop in market value has left exempt property over-encumbered by a judicial lien and a junior consensual lien, and the judicial lienholder insists upon foreclosure.  With the competing equities both hard to weigh and finely balanced, our task is simply to apply § 522(f)(2)(A) as Congress wrote it.

Accordingly, the judgment of the BAP is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.