**In re Paula M. CHARNOCK, Debtor.**

**Byron Z. Moldo, Appellant,**

v.

**Paula M. Charnock; Brad D. Krasnoff, Chapter 7 Trustee; Washington Mutual Bank, FA,[1] Appellees.**

**BAP No. CC–04–1150–MoPMa.**
**Bankruptcy SV–03–19241–AG.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 22, 2004 at Pasadena, California.

Filed—Dec. 15, 2004.

FA on this appeal.

Damon G. Saltzburg, Saltzburg, Ray & Bergman LLP, Los Angeles, CA, for Byron Z. Moldo.

Donald A. Hayes, Valencia, CA, for Paula M. Charnock.

Before: MONTALI, PERRIS and MARLAR, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

Judicial lien holder and appellant Byron Z. Moldo ("Creditor") appeals from the bankruptcy court's order avoiding his judicial lien under Section 522(f).[2] Creditor argues that his lien should not be avoided because it is senior to a subsequent consensual lien, which has not been avoided. We disagree. Senior as well as junior judicial liens are avoidable under the plain meaning of the statute. We are not persuaded that this result is either absurd or contrary to Congress' intent, as Creditor argues. Accordingly, we AFFIRM.

## I. FACTS

The relevant facts are undisputed. Creditor was appointed state court receiver in the dissolution of marriage proceeding of debtor Paula M. Charnock ("Debtor") and her former husband, George Charnock (Los Angeles Superior Court Case No. PD 005611). On March 8, 1996, the state court approved Creditor's final account and ordered Debtor and her husband to pay Creditor, jointly and severally, $56,072.40 for the outstanding administra-

---

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

tive fees and costs of the receivership estate. Creditor thereafter recorded an abstract of judgment in the Los Angeles County Recorder's Office (the "Abstract").

Debtor owns her residence in the County of Los Angeles (the "Property"). Debtor refinanced the Property in October 2002 with a loan from Long Beach Mortgage, which is now apparently owned by Washington Mutual, FA (collectively, "Consensual Lender"). Debtor paid Creditor $28,000.00 at or about the time of this refinancing.[3] A deed of trust was recorded in favor of Consensual Lender on October 28, 2002. This is subsequent in time to the judicial lien created by the Abstract, which was recorded on April 17, 1996.

Debtor filed her voluntary Chapter 7 petition on November 13, 2003. On February 3, 2004, Debtor filed a motion to avoid Creditor's judicial lien pursuant to Section 522(f) (the "Motion").

Debtor and Creditor have stipulated that for purposes of the issues on this appeal the Property is worth $435,000.00 and the balance owed to Consensual Lender (as of January 12, 2004) is $371,055.97. Debtor's bankruptcy Schedule C asserts an exemption in the Property of $75,000.00 pursuant to California Code of Civil Procedure ("CCP") § 704.730(a). Using these figures, the Motion calculates (tracking Section 522(f)(2)) that the sum of Creditor's judicial lien ($68,293.00), plus all other liens on the property (Consensual Lender's $371,055.97), plus the amount of the

exemption that Debtor could claim if there were no liens on the property ($75,000.00) is a total of $514,348.97, which exceeds the value that the Debtor's interest would have in the Property in the absence of any liens ($435,000.00) by $79,348.97, and therefore the entire amount of Creditor's $68,293.00 judicial lien is avoidable.

The Motion came on for hearing on March 4, 2004. The bankruptcy court orally granted the Motion at the hearing and entered a written order granting the Motion on March 17, 2004. Creditor filed a timely notice of appeal on March 24, 2004.

## II. ISSUE

Does Section 522(f) permit the avoidance of judicial liens that are senior to consensual liens?

## III. STANDARDS OF REVIEW

■ Interpretation of Section 522(f)(2) is an issue of law which we review de novo. *Kolich v. Antioch Laurel Vet. Hosp. (In re Kolich)*, 328 F.3d 406, 408 (8th Cir.2003).

## IV. DISCUSSION

1. *Section 522(f) and legislative history*

■ Section 522(f)(1) and (2) provide, in relevant part:

(f)(1) Notwithstanding any waiver of exemptions ... the debtor may avoid the fixing of a lien on an interest of the

---

**3.** Debtor alleges that the purpose of the refinance was to obtain funds to pay what she considers her half of the obligation to Creditor. Whatever Debtor considers her moral obligation to be, no party to this appeal has suggested that for legal purposes under Section 522(f) Debtor should be considered to owe anything less than the full amount of her joint and several obligation to Creditor. *Compare Miller v. Sul (In re Miller)*, 299 F.3d 183 (3d Cir.2002) (allocating liens among co-

obligors for purposes of judicial lien avoidance under § 522(f)). *Cf. Milgard Tempering, Inc. v. Darosa (In re Darosa)*, 318 B.R. 871, 2004 WL 3050727 (9th Cir. BAP 2004).

On a separate issue, it is unclear whether Consensual Lender knew of Creditor's judicial lien. Our disposition of this appeal does not depend on whether Consensual Lender knew or could have known that its lien might be junior to Creditor's judicial lien under California law.

debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section,[4] if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt [for alimony, maintenance, or support];...

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

(C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

11 U.S.C. § 522(f)(1) and (2).

Paragraph (2) was added to Section 522(f) as part of the Bankruptcy Reform Act of 1994. The legislative history of that amendment presents scenarios from a number of cases that Congress intended to overrule, all of which provide context for this appeal:

TITLE III–CONSUMER BANKRUPTCY ISSUES

....

Section 303. Impairment of exemptions.

Because the Bankruptcy Code does not currently define the meaning of the words "impair an exemption" in section 522(f), several court decisions have, in recent years, reached results that were not intended by Congress when it drafted the Code. This amendment would provide a simple arithmetic test to determine whether a lien impairs an exemption, based upon a decision, *In re Brantz*, 106 B.R. 62 (Bankr.E.D.Pa. 1989), that was favorably cited by the Supreme Court in *Owen v. Owen*, [500 U.S. 305,] 111 S.Ct. 1833, 1838, n. 5, [114 L.Ed.2d 350].

The decisions that would be overruled involve several scenarios. The first is where the debtor has no equity in a property over and above a lien senior to the judicial lien the debtor is attempting to avoid, as in the case, for example, of a debtor with a home worth $40,000 and a $40,000 mortgage. Most courts and commentators had understood that in that situation the debtor is entitled to exempt his or her residual interests, such as a possessory interest in the property, and avoid a judicial lien or other lien of a type subject to avoidance, in any amount, that attaches to that interest. Otherwise, the creditor would retain the lien after bankruptcy and could threaten to deprive the debtor of the exemption Congress meant to protect, by executing on the lien. Unfortunately, a minority of court decisions, such as *In re Gonzales [Gonzalez]*, 149 B.R. 9 (Bankr.D.Mass.1993), have interpreted section 522(f) as not permitting avoidance of liens in this situation. The

---

**4.** Section 522(b) provides for exemptions as listed in Section 522(d) or, if a state opts out, under state law. California has opted out in CCP § 703.130. Debtor claimed a homestead exemption of $75,000.00, available under CCP §§ 703.140, 704.720(a), 704.730(a)(2), and 704.800.

formula in the section would make clear that the liens are avoidable.

The second situation is where the judicial lien the debtor seeks to avoid is partially secured. Again, in an example where the debtor has a $10,000 homestead exemption, a $50,000 house and a $40,000 first mortgage, most commentators and courts would have said that a judicial lien of $20,000 could be avoided in its entirety. Otherwise, the creditor would retain all or part of the lien and be able to threaten postbankruptcy execution against the debtor's interest which, at the time of the bankruptcy is totally exempt. However, a few courts, including the Ninth Circuit in *In re Chabot*, 992 F.2d 891 (9th Cir.1992[1993]), held that the debtor could only avoid $10,000 of the judicial lien in this situation, leaving the creditor after bankruptcy with a $10,000 lien attached to the debtor's exempt interest in property. This in turn will result, at a minimum, in any equity created by mortgage payments from the debtor's postpetition income-income which the fresh start is supposed to protect-going to the benefit of the lienholder. It may also prevent the debtor from selling his or her home after bankruptcy without paying the lienholder, even if that payment must come from the debtor's $10,000 exempt interest. The formula in the section would not permit this result.

The third situation is in the Sixth Circuit, where the Court of Appeals, in *In re Dixon*, 885 F.2d 327 (6th Cir.1989), has ruled that the Ohio homestead exemption only applies in execution sale situations. Thus, the court ruled that the debtor's exemption was never impaired in a bankruptcy and could never be avoided, totally eliminating the right to avoid liens. This leaves the debtor in the situation where, if he or she wishes to sell the house after bankruptcy, that can be done only by paying the lienholder out of equity that should have been protected as exempt property. By focusing on the dollar amount of the exemption and defining "impaired," the amendment should correct this problem. By defining "impairment," the amendment also clarifies that a judicial lien on a property can impair an exemption even if the lien cannot be enforced through an execution sale, thereby supporting the result in *In re Henderson*, 18 F.3d 1305 (5th Cir.1994), which permitted a debtor to avoid a lien that impaired the homestead exemption even though the lien could not be enforced through a judicial sale. *The amendment also overrules [Simonson v. First Bank of Greater Pittston] In re Simonson, 758 F.2d 103 (3d Cir.1985), in which the Third Circuit Court of Appeals held that a judicial lien could not be avoided in a case in which it was senior to a nonavoidable mortgage and the mortgages on the property exceeded the value of the property. The position of the dissent in that case is adopted.*

H.R. Rep. 103–835, at 52–54 (Oct. 4, 1994); *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361–63 (underscoring and italics added).

2. *Interpretation of Section 522(f)(2)(A)*

Debtor's opening brief on this appeal argues that Creditor has conceded that his lien would be avoidable under a literal reading of Section 522(f)(2)(A). Creditor's reply brief does not disagree. Nevertheless, Creditor characterizes the application of Section 522(f) to his judicial lien as a "quirk" in the statute that Congress never anticipated and that would create "absurd" results—namely, giving debtors and junior

lenders a chance for a great windfall.[5]

Creditor points out that state law defines property rights and under California property law his judicial lien would have priority over Consensual Lender's consensual lien. From this he reasons that it is not really his judicial lien that "impairs" Debtor's homestead exemption but rather Consensual Lender's junior consensual lien that creates the impairment. *See generally Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (property interests created and defined by state law); *Dolan v. D.A.N. Joint Venture (In re Dolan),* 230 B.R. 642 (Bankr.D.Conn. 1999) (same). Creditor alleges that the purpose of Congress in enacting Section 522(f) was to prevent unsecured creditors from bypassing exemptions simply by converting their claims into judicial liens and obtaining security interests in otherwise exempt property. *See* H.R. Rep. 95–595, at 126–27 (Sept. 8, 1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, at 6087–88; *Nelson v. Scala,* 192 F.3d 32, 34 (1st Cir.1999); *Lehman v. VisionSpan, Inc. (In re Lehman),* 205 F.3d 1255, 1257 (11th Cir.2000). As we understand Creditor's argument, Congress' alleged purpose is not served by avoiding his judicial lien because Debtor chose voluntarily to encumber what would have been her exempt equity with a consensual junior lien.

■ Creditor's arguments would be more appropriately addressed to Congress, which has already amended Section 522(f) once (in 1994) to add the simple formula in Section 522(f)(2)(A) and to reject judicial deviation from that formula. Congress clearly was aware of the possibility of senior judicial liens. As quoted above, the legislative history describes the *Simonson* case as involving "senior" judicial liens. Congress easily could have added the word "senior" to Section 522(f)(2) had it wanted to, so that the statute would have counted only "all other *senior* liens on the property" in calculating whether the judicial lien at issue impaired an exemption. *Cf.* 11 U.S.C. § 522(f)(2)(A)(ii) ("all other liens on the property"). Congress did not do this. The statute is clear. We cannot disregard the plain meaning of the statute. *Kolich,* 328 F.3d at 409 (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

There is some authority for superseding a statute's plain meaning if applying its terms literally would produce an absurd result or an outcome demonstrably at odds with the intention of the statute's drafters. *See Lehman,* 205 F.3d at 1256; *Kolich,* 328 F.3d at 409. We disagree with Creditor, however, that this is such a case.

Creditor cites several cases arising in what *Kolich* describes as "another frequently litigated context"—namely, where a debtor seeks to avoid a judicial lien on a homestead that is jointly owned with another person who did not join in the bankruptcy petition, and one or more outstanding liens apply to the entire property. *See Lehman,* 205 F.3d at 1257–58; *Nelson v. Scala,* 192 F.3d at 35; *Dolan,* 230 B.R. at 646–47; *In re Ware,* 274 B.R. 206, 208–09 (Bankr.D.S.C.2001); *Miller,* 299 F.3d at 186–87. We express no opinion whether these cases are correct, but as *Kolich* points out the issue they address is dissimilar to the issue in this appeal because these cases involved situations in which a

---

**5.** A case not cited by Creditor (or Debtor) rejects arguments remarkably similar to Creditor's arguments on this appeal, using similar phrasing. *See Kolich,* 328 F.3d at 407–410 (summarizing arguments that a mechanical application of the formula in § 522(f)(2)(A) produces "an absurd result and an unjust windfall to a junior secured creditor and the bankruptcy debtors," and that statute includes an unintended "quirk in drafting").

literal application of the formula in Section 522(f)(2)(A) "has the effect of *creating* additional equity for the debtor at the expense of the lienholder whose lien is thereby avoided." *Kolich*, 328 F.3d at 409 (emphasis in original) (distinguishing *Lehman, Nelson v. Scala*, and *Ware*). *But see Darosa*, 318 B.R. 871, 2004 WL 3050727.

We are not persuaded that in this case Debtor will receive a windfall or a benefit that Congress did not intend. Although Creditor characterizes Debtor's preservation of her homestead as a windfall, every creditor who seeks a judgment and thereafter obtains a judicial lien should know that judicial liens may be subject to exemptions. That risk is simply part of the calculus of whether to seek a judgment, and it reflects the importance that Congress and many states including California have given to a debtor's fresh start. *Katz v. Pike (In re Pike)*, 243 B.R. 66, 72–73 (9th Cir.BAP1999). Debtor's preservation of her homestead exemption is no more a windfall than any other aspect of the Bankruptcy Code, the very nature of which is to adjust what would otherwise be the rights among debtors and their creditors under state law. By way of analogy, the fact that Congress has made some debts nondischargeable is not a windfall to the holders of those debts; it is simply a facet of the Bankruptcy Code.

Nor are we persuaded by Creditor's argument that Consensual Lender might receive an unintended windfall from avoidance of Creditor's judicial lien. Creditor cites no authority that Consensual Lender would receive any benefit from such avoidance, and the dissent in *Simonson* (ap-

proved by the legislative history to the 1994 amendments) suggests otherwise:

> . . . the debtor may recover the avoided judicial lien [under Section 522(i)(1) ], and the equitable interest represented thereby merges with the legal title to the property already in the estate.
>
> Once the debtor recovers an avoided transfer pursuant to section 522(i)(1), section 522(i)(2) permits the debtor to preserve the avoided transfer [for] the benefit of his exemption, notwithstanding the usual rule under [Section 551], that avoided transfers are automatically preserved for the benefit of the estate. In other words, section 522(i)(2) permits the interest of the debtor's exemption to "stand in the shoes" of the avoided judicial liens.

*Simonson*, 758 F.2d at 112 (dissent) (citations omitted).

Under this approach, there is no benefit to Consensual Lender whatsoever. For example, if Consensual Lender in this case had a claim of $500,000.00 that was junior to a $60,000.00 lien asserted by Creditor under his Abstract, then under the *Simonson* approach Debtor would stand in the shoes of Creditor up to the $60,000.00 lien and would be able to assert her homestead exemption in that amount—the result would be no more and no less than the economic risk for which Consensual Lender bargained when it took a security interest in property subject to a prior judicial lien.[6]

■ We also are not persuaded by Creditor's argument that applying Section 522(f) in this case would impermissibly in-

---

**6.** We express no opinion whether the approach advocated in the *Simonson* dissent is the law because there is no contest between Debtor and Consensual Lender before us. Even if the *Simonson* dissent is wrong on this issue, and there were a windfall to Consensu-

al Lender, that would not change our disposition of this case because, as discussed below, Congress chose among conflicting policies and ultimately favored consensual lienholders over judicial lienholders.

terfere with state law property rights. The focus is not on state law lien priority outside of bankruptcy but on the meaning of the Bankruptcy Code, and Congress has determined that judicial lienholders are not on an equal footing with consensual lienholders. *Pike,* 243 B.R. at 72–73. Put differently, although state law generally defines property rights, those rights are subject to federal bankruptcy law concerning conflicts between exemptions and other interests in property. The Supreme Court has held in an analogous context that a judicial lien can be avoided as impairing a debtor's state law exemptions even though the state has defined exempt property in such a way as specifically to exclude property encumbered by such liens. *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

Creditor has not shown that Congress' distinction between judicial liens and consensual liens is arbitrary. We have observed that even under California law judgment creditors are not treated equally with consensual lienholders. *Pike,* 243 B.R. at 73 (citation omitted). Moreover, Congress had its own reasons for treating judgment creditors differently from consensual lienholders. As stated in *Kolich:*

> To be sure, the Bankruptcy Code usually looks to state law to define the property rights and priorities of creditors, including secured creditors. But § 522(f) is an exception to that policy. It was enacted to permit the avoidance of judicial liens that can interfere with the debtor's post-petition fresh start. This selective avoidance gives an advantage under federal law to secured creditors holding consensual liens, typically, residential mortgage lenders. But Con-

gress intended to treat consensual lienholders more favorably, because their contractual relationships with the bankruptcy debtor typically allow the debtor to acquire equity in the exempt property by making post-petition mortgage payments. The 1994 amendment creating the statutory formula here at issue was expressly aimed at overruling prior judicial decisions compromising that intent. *See* H.R.Rep. No. 103–835, at 52–54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361–63; *In re Holland,* 151 F.3d 547, 549–51 (6th Cir.1998).

*Kolich,* 328 F.3d 406. *See also Brinley v. LPP Mortgage, Ltd.,* 2003 WL 1825521 at *2 (W.D.Ky. March 31, 2003) ("State lien priority law, while perhaps useful in state foreclosure proceedings, simply has no applicability when Congress has spoken on the subject, and clearly."); *Radcliffe v. LPP Mtg., Ltd.,* 2003 WL 1825451 at *2 (W.D.Ky. March 31, 2003) (same).[7]

Even prior to the 1994 amendments, the dissent in *Simonson* recognized this overriding Congressional purpose of a fresh start, to "provide relief for [the] overburdened debtor." *Simonson,* 758 F.2d at 110 (Becker, C. J., quoting H.R. Rep. 95–595, at 126 (Sept. 8, 1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, at 6087). As the *Simonson* dissent went on to state:

> This policy is no less compelling merely because, as Congress well knew would often be the case, a straitened debtor has overencumbered his [or her] property.

*Simonson,* 758 F.2d at 110.

Creditor attempts to distinguish *Simonson* as a case in which the debtors had no

---

**7.** Creditor argued before the bankruptcy court that the United States Constitution would prevent Congress from reversing the priority scheme established by state law, and that the bankruptcy court's reading of Section 522(f) would do just that. Creditor has not renewed this argument on this appeal and accordingly we need not address it. *United States v. Montoya,* 45 F.3d 1286, 1300 (9th Cir.1995).

equity in their homestead property. That issue, rather than the priority of the judicial liens involved, was allegedly the principal issue in *Simonson*. This may be true of the majority decision in *Simonson*, which held that because the dollar amount of the first and fourth liens on the property (the consensual liens) exceeded the agreed sale price, therefore the debtors "had no interest in the property to which an exemption could attach." *Simonson*, 758 F.2d at 105. The dissent, however, considered the "relative priority position of the four encumbrances" to be "critical." *Id.* at 107.

Creditor cites one case in which the court denied a motion under Section 522(f) to avoid a judicial lien that was senior to a consensual lien, *In re Ochmanek*, 266 B.R. 114 (Bankr.N.D.Ohio 2000). In that case the transferee of a consensual mortgage failed to record the transfer documents, so when a judicial lien creditor foreclosed the mortgage the transferee did not receive notice. Almost the entire opinion is devoted to a discussion of whether the judgment lien creditor could be considered a bona fide purchaser or could obtain priority over the mortgage transferee using the doctrine of lis pendens. Having concluded that the mortgage transferee lost its prior-ity by failing to record the transfer, the court concludes in one sentence:

> As a result, [the judgment lien creditor's] lien against the Debtors' residence does not impair the Debtors' exemption within the meaning of 11 U.S.C. § 522(f), and therefore [his] lien may not be avoided thereunder.

*Ochmanek*, 266 B.R. at 123.

There is no indication that the parties in *Ochmanek* raised the issue in this appeal, and that court's one-sentence conclusion is unsupported by any discussion or citations. We are not bound by this decision of a single bankruptcy court in another circuit, and we respectfully disagree with this aspect of its application of Section 522(f).[8]

Creditor advances one more policy argument against a literal application of that formula. He argues that a debtor facing foreclosure of a judicial lien could place a "friendly" consensual lien on the homestead property in favor of a brother (or other relative or friend) and immediately file a voluntary bankruptcy petition so as to take advantage of Section 522(f) to avoid the judicial lien.

Creditor implies that such a lien would be a sham, but if so then it may be avoidable as a fraudulent transfer or a preference or it might be the basis for an order

---

**8.** Creditor also analogizes to California cases that decline to apply a literal reading of CCP § 704.800(a), which prohibits judicial lien sales of property unless the sale price exceeds the amount of the homestead exemption plus "*all* liens and encumbrances" (emphasis added). The cases interpret "all" liens and encumbrances to mean all liens *senior* to the executing judgment creditor, so that a judicial lien sale can occur when the judicial lienholder will receive some of the proceeds but not otherwise. *See Bratcher v. Buckner*, 90 Cal. App.4th 1177, 109 Cal.Rptr.2d 534, 542 (2001); *Rourke v. Troy*, 17 Cal.App.4th 880, 21 Cal.Rptr.2d 660, 662–64 (1993).

These cases adopt a sensible reading of CCP § 704.800(a) but they are irrelevant to an interpretation of Section 522(f). If CCP § 704.800(a)'s reference to "all liens and encumbrances" were read literally then judgment debtors would be subject to judicial lien sales if they had an equity in the property but would have a veto power over any judicial lien sale that happens to involve over-encumbered property, even if the judgment creditor would be paid in full from that sale. This result would be arbitrary and is contrary to the California statutory scheme and legislative history, as discussed in *Bratcher* and *Rourke*.

There is no similar veto power involved in this case, and as discussed in the text Congress' choice to favor consensual liens over judicial liens in Section 522(f) is not arbitrary and is supported by the legislative history.

denying or revoking the debtor's discharge. *See* 11 U.S.C. § 727(a)-(e). If the lien is not a sham—if it was given in exchange for adequate consideration and the funds were used for legitimate purposes—then it is not at all clear that the consensual lien should be avoided, even if it was granted to a relative or friend.

More fundamentally, we agree with *Kolich* that although the policy considerations are complex we are bound to follow the plain meaning of the statute:

> We are not entirely comfortable with the equities of literally applying the statutory formula in this situation. It may give a debtor contemplating bankruptcy the ability to wipe out judicial liens by persuading a lender to take an otherwise junior consensual lien that renders the exempt property over-encumbered and therefore ripe for impairment. One would expect lenders to refuse to make such high-risk loans, but there may be times when self-interest or hard-to-detect collusion will lead to an abuse of § 522(f). On the other hand, refusing to apply the statutory formula as written may result in denying deserving debtors the fresh-start advantage § 522(f) was enacted to provide—for example, if a drop in market value has left exempt property over-encumbered by a judicial lien and a junior consensual lien, and the judicial lienholder insists upon foreclosure. With the competing equities both hard to weigh and finely balanced, our task is simply to apply § 522(f)(2)(A) as Congress wrote it.

*Kolich,* 328 F.3d at 410.

## V. CONCLUSION

The plain meaning of Section 522(f)(2) requires avoidance of Creditor's judicial lien, even though that lien is senior to a consensual lien. Creditor has not shown that this result is either absurd or demonstrably at odds with Congress' intent. Accordingly, we AFFIRM.