**In re Jose Jorge DAROSA and Stephanie Darosa, Debtors.**

**In re David J. Griffiths, III, Debtor.**

**Milgard Tempering, Inc., Appellant,**

**v.**

**Jose Jorge Darosa, Stephanie Darosa and David J. Griffiths, III, Appellees.**

**BAP Nos. EC–04–1163–MOPMA, EC–04–1164–MOPMA Bankruptcy Nos. 03–28824–B–07, 03–28825–B–07.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 21, 2004.

Filed Dec. 15, 2004.

C. Christopher Merrill, North Highlands, CA, for Milgard Tempering, Inc.

W. Scott De Bie, Sacramento, CA, for Jose Jorge Darosa.

Before: MONTALI, PERRIS, and MARLAR, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

One creditor held a judicial lien against the homesteads of two separate debtors. Both debtors filed motions to avoid the judicial liens on their respective residences pursuant to 11 U.S.C. § 522.[1] The creditor objected in both cases, contending that because the debtors were jointly and severally liable on a superior statutory lien, they were each subrogated to

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

claims against the other. The creditor argued that each debtor should therefore reduce the statutory lien by one-half when calculating the encumbrances against their respective homesteads for purposes of. determining whether the creditor's lien impaired their exemptions. The bankruptcy court overruled the objections, and entered orders avoiding the creditor's judicial lien against each of the debtors' homesteads. The creditor appealed both orders, and the appeals were consolidated. We AFFIRM.

## I.

### FACTS

Appellee David J. Griffiths, III ("Griffiths") and appellee Jose Jorge DaRosa ("DaRosa") were co-owners of Advanced Glass Products, Inc. ("Advanced"), with each owning a one-half interest in the corporation. They each also owned separate residences in Solano County, California.

In 2001, the Director of Industrial Relations, State of California (the "Director"), acting through the Uninsured Employers Fund Collection Unit (the "Fund"), recorded certificates of lien in Solano County, California, in the sum of $100,692.75 against both the residences of Griffiths and DaRosa. The Director filed these certificates of lien (the "Statutory Liens") pursuant to California Labor Code section 3720 ("Labor § 3720").[2] Thereafter, in 2002, appellant Milgard Tempering, Inc. ("Milgard") recorded in Solano County an abstract of judgment in the amount of $37,568.79 against Advanced and against DaRosa and Griffiths individually.

On August 7, 2003, Griffiths filed a chapter 7 petition. Minutes later, DaRosa and his wife (represented by the same counsel representing Griffiths) filed their own chapter 7 petition. For the purposes of this Opinion, DaRosa and Griffiths shall be referred to as "Appellees" and DaRosa and his spouse shall be referred to as the "DaRosas."

On November 14, 2003, Griffiths filed a motion under section 522(f)[3] to avoid Mil-

**2.** One treatise on California law describes liens arising under Labor § 3720 as follows:
When the Workers' Compensation Appeals Board or the Director of Industrial Relations determines that an employer has not secured the required payment of compensation, or when the director has determined that the employer is prima facie illegally uninsured, the director may file for record a certificate of lien, in the office of the county recorder in the counties in which the employer's property is possibly located, showing the date that the employer was found to be illegally uninsured or the date that the director has determined that the employer was prima facie illegally uninsured. On recordation, the certificate constitutes a valid lien in favor of the director; has the same force, effect, and priority as a judgment lien; and continues for 10 years from the time of the recording unless sooner released or otherwise discharged. [Footnote omitted]. A lien so filed has continued existence independent of, and may be foreclosed on independently of, any right of action arising out of those provisions as to institution of a civil action for collection of an award and entry of judgment.
See 65 Cal. Jur.3d, Work Injury Compensation § 708 (2004). Here, the employer was Advanced. Where the employer is a corporation, substantial shareholders (defined in California Labor Code section 3717(b) ("Labor § 3717") as shareholders holding at least 15 percent of a corporation's stock) are jointly and severally liable with the corporation and certificate of liens may be filed against their property. See Cal. Labor Code §§ 3717 and 3720. Because DaRosa and Griffiths were substantial shareholders of Advanced (the employer here), the Director filed the Statutory Liens against their respective residences.

**3.** Section 522(f) provides that a debtor "may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is … a judicial lien, other than a judicial lien that [are inap-

gard's judicial lien against his residence. On the same date, the DaRosas also filed a separate motion in their case to avoid Milgard's judicial lien against their residence.[4] The two motions were scheduled for a combined evidentiary hearing, although the two cases were not formally consolidated.[5]

Milgard objected to both motions, contending that DaRosa and Griffiths had a subrogated claim against each other for half the value of each Statutory Lien and that each should have counted only one-half of the Statutory Lien amount when calculating whether Milgard's lien impaired the exemption in their respective homesteads.[6] If the liability to the Director and the Fund were so apportioned between Griffiths and DaRosa, sufficient equity would exist in the residences (even when taking into account Milgard's judicial lien) for Appellees to recover the full amount of their claimed exemptions.[7]

After conducting a hearing on the motions, the bankruptcy court entered a memorandum decision on March 18, 2004,

---

plicable here]." 11 U.S.C. § 522(f)(1)(A). Subsection 522(f)(2) provides the formula for determining whether a judicial lien impairs a debtor's exemption:

> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.
> (B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

4. In his initial motion to avoid Milgard's judicial lien, Griffiths claimed a homestead exemption in the amount of $75,000, valued his residence at $330,000, and stated that it was encumbered by a consensual mortgage in the amount of $150,673, the Statutory Lien in the amount of $104,412.75, and Milgard's judicial lien in the amount of $37,568.79. In their initial motion, the DaRosas claimed a homestead exemption in the amount of $17,425, valued their residence at $410,000 and stated that it was encumbered by a consensual lien in the amount of $352,038, the Statutory Lien in the amount of $50,346.38, and Milgard's judicial lien in the amount of $37,568.79. After Milgard filed objections to both motions (objecting to, *inter alia*, the valuations of the homes), Griffiths stated that the Statutory Lien equalled $123,093.70 (instead of $104,412.75) and the DaRosas likewise stated

that the Statutory Lien equalled $123,093.70 (instead of $50,346.38). The DaRosas also increased the valuation of their residence to $482,000 in accordance with Milgard's estimation of value.

5. Bankruptcy Judge Klein transferred Griffiths' case to Bankruptcy Judge McKeag, who was handling the DaRosas' case.

6. At oral argument, counsel for Milgard acknowledged that if the Statutory Lien were to be reduced by one-half, Milgard's lien against each Appellee's residence would also have to be reduced by one-half.

7. In their Opening Brief, the DaRosas indicate that they will amend their exemption to claim the allowed amount of $75,000; if they do so, Milgard's judicial lien will impair their exemption even if they count only one-half of the Statutory Lien in their section 522(f) calculations. *Appellant's Opening Brief* at page 7. Because the DaRosas did not amend their exemption while their motion was still pending before the bankruptcy court, and because they did not present this argument to the bankruptcy court, we will not consider what consequences would flow from this hypothetical amendment. *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir.1989) (appellate courts generally do not consider arguments "that are not 'properly raise[d]' in the trial courts."); *Concrete Equip. Co. v. Fox (In re Vigil Bros. Constr., Inc.)*, 193 B.R. 513, 520 (9th Cir. BAP 1996) (same). For a discussion of the ability of and limitations on debtors to amend exemptions, see *Arnold v. Gill (In re Arnold)*, 252 B.R. 778 (9th Cir. BAP 2000).

indicating that it would utilize the full amount of the Statutory Liens in its section 522(f) calculations. The parties had agreed at the hearing that if the entire liability under the Statutory Liens were included, Milgard's judgment lien could be avoided in its entirety in each bankruptcy case. The court therefore held that both Griffiths and DaRosa could avoid Milgard's judicial lien under section 522(f), and required counsel to submit proposed orders avoiding the liens.

Milgard filed a notice of appeal in both of Appellees' cases on Monday, March 29, 2004, even though no orders had been entered on the motions as of that date. The court entered the orders granting the motions on April 6, 2004. Under Bankruptcy Rule 8002(a), Milgard's premature notices of appeal shall be treated as timely filed.

## II.

### ISSUE

Did the bankruptcy court err in refusing to apportion the Statutory Lien liability between the Appellees in calculating whether Milgard's judicial lien impaired the exemptions of each Appellee for the purposes of section 522(f)?

## III.

### STANDARD OF REVIEW

 The facts in this case are not disputed; the only issues presented in this appeal are issues of law or issues regarding the proper application of the law to the undisputed facts. We review such issues under the de novo standard. *Redback Networks Inc. v. Mayan Networks Corp. (In re Mayan Networks Corp.)*, 306 B.R. 295, 298 (9th Cir. BAP 2004). Interpretation of section 522(f) is a legal issue which is also reviewed de novo. *Goswami v.*

*MTC Distributing (In re Goswami)*, 304 B.R. 386, 389 (9th Cir. BAP 2003).

## IV.

### DISCUSSION

 Section 522(f)(1) permits a debtor to avoid the fixing of a judicial lien to the extent it impairs the debtor's exemptions. Section 522(f)(2) sets forth a mathematical formula for determining whether a judgment lien may be avoided. A judicial lien impairs an exemption "to the extent that the sum of (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption … exceeds the value that the debtor's interest in the property would have in the absence of any liens." 11 U.S.C. § 523(f)(2)(A); *see also Bank of America Nat'l Trust and Sav. Assn. v. Hanger (In re Hanger)*, 217 B.R. 592, 594 (9th Cir. BAP 1997), *aff'd*, 196 F.3d 1292 (9th Cir.1999).

If this statutory formula were applied literally, Milgard's judicial liens would impair Appellees' exemptions and would be avoidable. For example, in Griffiths' case, the sum of Milgard's lien ($37,568.79), the Statutory Lien ($123,093.70), the consensual mortgage ($150,673) and his homestead exemption ($75,000) exceeds the value of his residence ($330,000). Similarly, in the DaRosas' case, the sum of Milgard's lien ($37,568.79), the Statutory Lien ($123,093.70), the consensual mortgage ($352,038) and their homestead exemption ($17,425) exceeds the value of their residence ($482,000). In both cases, unless the amount of the consensual liens, the Statutory Liens or the claimed homestead exemptions were somehow reduced, Milgard's liens are subject to avoidance under section 522(f).

Milgard attempts to evade avoidance of its lien under a literal application of the statute by arguing that the amount of the

Statutory Lien in both cases should be halved. In particular, Milgard contends that because Appellees are jointly and severally liable for the debt secured by the Statutory Lien, they would be subrogated to each other in the event of payment of that debt.[8] Milgard therefore argues that Appellees are each entitled to consider only one-half of the Statutory Lien amount when determining whether Milgard's judicial liens (when added to other liens) impaired their exemptions.[9]

The bankruptcy court held that section 522(f) does not provide for such an apportionment between different debtors which may be jointly liable on a secured debt, stating that "[t]here is no support for the proposition that debt should be apportioned among multiple items of collateral or among multiple obligors in order to preserve judgment liens that otherwise impair exemptions." The court further observed that if Appellees "had staggered their bankruptcy filings or only one of the [Appellees] had filed bankruptcy, the court would have included the entire amount owed to the Fund in the section 522(f)(2)(A) calculation.[10] The fact that a senior creditor has additional collateral or that one or more individuals are jointly obligated for senior debt does not affect the routine calculation of the lien avoidance formula."

In addition, the court indicated (but did not directly state) that Milgard had not demonstrated that each Appellee has a "subrogated claim" against the other for one-half of the Statutory Lien amount because neither Appellee has actually paid all or a part of the liability secured by the Statutory Lien. We agree with the bankruptcy court that the doctrine of subrogation is not applicable to Appellees.

## A. Appellees Are Not Currently Subrogated to Each Other

"In general terms, subrogation is the substitution of one party in place of another with reference to a lawful claim, demand or right. It is a derivative right, acquired by satisfaction of the loss or claim that a third party has against another." *Hamada v. Far East Nat'l Bank (In re Hamada)*, 291 F.3d 645, 649 (9th Cir.2002). When the doctrine of subrogation applies, the party paying the loss or claim (the subrogee) steps into the shoes of the person who suffered the loss (the subrogor), thereby allowing the subrogee to succeed to the legal rights and claims of the subrogor with respect to the loss or claim. *Id.*

Three forms of subrogation exist. The first type is "conventional" or "contractual" subrogation, which arises from an express or implied agreement between the subrogor and subrogee. *Hamada*, 291 F.3d at 649. The second type is statutory subrogation, such as the type that arises by virtue of section 509(a). *Id.* The third type is "legal" or "equitable" subrogation. *Id.*

**8.** In other words, if Griffiths paid $123,093.70 to the Director, Griffiths could seek to recover half of that amount from DaRosa (and vice versa).

**9.** If the Statutory Lien were so reduced in both cases, the sum of the liens and the exemptions would not exceed the Appellees' interest in their respective residences in the absence of any liens. At least a portion of

Milgard's lien would therefore survive the section 522(f) avoidance motions.

**10.** As indicated in the bankruptcy court's observation, the simultaneous filing of their bankruptcy cases by Appellees should not require them or the court to apply section 522(f)'s mathematical formula any differently than they would have if only one of them had filed for bankruptcy.

Milgard contends on appeal [11] that Griffiths was contractually subrogated to half of the Director's claim against DaRosa because Griffiths implicitly had agreed to pay the full amount and that DaRosa "would pay or secure 'his half' of the lien amount." *Appellant's Opening Brief* at 14–16. Milgard, however, introduced no evidence of such an agreement. Instead, it extrapolates and infers from the DaRosas' pleadings that an implied agreement existed. In particular, Milgard notes that in their initial motion to avoid the lien, the DaRosas valued the Statutory Lien at less than half of the amount than they did in their reply and subsequent pleadings. In contrast, Griffiths valued the Statutory Lien at a much higher amount in his initial motion. According to Milgard, "[a] plain construction of these pleadings is that [A]ppellees had agreed, either expressly or by fair implication," for Griffiths to be subrogated to the Director's claims. We disagree. The pleadings, which have been amended, simply do not support an inference that Appellees had entered into a subrogation contract (implied or express).

Milgard next contends that Appellees are statutorily subrogated to each other pursuant to section 509, which provides:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—

 (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—

 (A) allowed under section 502 of this title;

 (B) disallowed other than under section 502(e) of this title; or

 (C) subordinated under section 510 of this title; or

 (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

11 U.S.C. § 509.

■■■ Section 509, if it applies at all, will not aid Milgard.[12] As noted by the

---

**11.** We were unable to locate in the record where Milgard presented this argument to the bankruptcy court. Generally, we will not consider issues raised for the first time on appeal. *Franchise Tax Board v. Roberts (In re Roberts)*, 175 B.R. 339, 345 (9th Cir. BAP 1994). Nonetheless, we may consider an issue raised for the first time on appeal if it is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court. *Id.* Here, the issue is a pure question of law because the pertinent record has been fully developed. *Id.* Appellees addressed the issue in their briefs and they do not assert that they will suffer any prejudice in having the issue addressed by us.

**12.** Section 509 does not even appear to be applicable here. Section 509 was designed to "maintain a fair allocation of estate assets" (as stated in 4 Alan N. Resnick et al., *Collier on Bankruptcy,* ¶ 509.01 (15th ed. rev.2004)); it is not designed to confer subrogation rights on a party outside of this context. We have no reason to believe the section should control claims against exempt assets not within the bankruptcy estate.

bankruptcy court, subrogation under section 509 requires actual payment of all or part of the claim. "It is only in the latter case of actual payment by the codebtor that subrogation under section 509 is available." 4 *Collier on Bankruptcy* ¶ 509.02[3]; *see also Cornmesser v. Swope (In re Cornmesser's, Inc.)*, 264 B.R. 159, 162 (Bankr.W.D.Pa.2001) ("An entity is subrogated to the rights of a creditor for purposes of § 509(a) *if and only if* (1) the entity is liable with the debtor; (2) on a claim of a creditor against the debtor; and (3) *the entity pays such claim.*") (emphasis added). The statute itself provides that an entity "that pays" a claim on which it is jointly liable with a debtor is subrogated "to the extent of such payment." 11 U.S.C. § 509(a). Since neither Appellee has made any payment, section 509 is simply inapplicable.

■■■ Milgard also argues that Appellees are equitably subrogated to each other. " 'Equitable subrogation is a legal fiction, which permits a party who satisfies another's obligation to recover from the party primarily liable for the extinguished obligation.' " *Hamada*, 291 F.3d at 649 (quoting *Polec v. Northwest Airlines, Inc. (In re Air Crash Disaster)*, 86 F.3d 498, 549 (6th Cir.1996)). Equitable subrogation is a doctrine governed by state law. *Mort v. United States*, 86 F.3d 890, 893 (9th Cir.1996). Thus, whether equitable subrogation is applicable to Appellees is a question of California law.

■■■ *Hamada*, applying California state law, described the five-factor test for determining whether equitable subrogation is available: (1) payment must have been made by the subrogee to protect his own interest; (2) the subrogee did not act as a volunteer; (3) the debt paid was one for which the subrogee was *not* primarily liable; (4) the entire debt has been paid; and (5) subrogation would not work any

injustice to the rights of others. *Hamada*, 291 F.3d at 655 (in dissent), *citing Han v. United States* 944 F.2d 526, 529 (9th Cir. 1991). At least two of these factors are not present here: no portion of the debt has been paid and, more importantly, both of the Appellees are primarily liable for the debt secured by the Statutory Lien. As discussed previously, Labor §§ 3717 and 3720 impose joint and several liability on Griffiths and DaRosa to pay the debt to the Director. Each has primary and equal liability. The doctrine of equitable subrogation is therefore inapplicable.

Because Appellees are not contractually, statutorily or equitably subrogated to each other, the bankruptcy court did not err in refusing to allocate liability for the Statutory Lien indebtedness between the two. The court therefore did not err in granting both of the motions to avoid Milgard's judicial liens.

B. *Court Cannot Modify Application of Statutory Formula for Hypothetical and Equitable Reasons*

■■■ Even if Appellees are not now subrogated to each other, Milgard argues that one may be subrogated to another at some point in the future. Milgard therefore asks us to apply equity, take into account the possibility of future subrogation, and apportion the Statutory Lien between Griffiths and DaRosa accordingly when calculating whether their exemptions have been impaired. We will not, however, adjust the mathematical formula of section 522(f)(2) as a matter of equity to provide for hypothetical events. That section "should be interpreted according to its plain meaning." *Hanger*, 217 B.R. at 597–98, citing *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (the

"plain meaning of legislation should be conclusive").[13] Section 522(f)(2)(A)(ii) specifically requires a court to consider "all other liens on [a debtor's] property" when calculating whether a lien impairs an exemption; it does not provide a mechanism for excluding non-avoided recorded liens from the calculation, nor does it permit adjustments based on liens that also encumber property belonging to others. We are bound to follow the statutory calculation. *Hanger,* 217 B.R. at 597–98.

While not precisely on point, the decision in *In re Pray,* 242 B.R. 205, 209 (Bankr.D.Mass.1999), is analogous and instructive. In *Pray,* a judgment creditor requested the bankruptcy court to apply the marshaling doctrine in determining whether its judgment lien impaired a debtor's exemption for the purposes of section 522(f). The court overruled the creditor's attempt to assert a hypothetical event and an equitable doctrine as a defense to a section 522(f) lien avoidance motion, stating:

> If marshaling were appropriate as a defense against lien avoidance, § 522(f)(2)(A) would be ineffective whenever a lien creditor faces an avoidance action in the presence of a senior mortgagee with more than one piece of collateral and insufficient equity to cover both the mortgage and the judicial lien

on the debtor's residence. But this is precisely the circumstance in which Congress intended to preserve the debtor's exemption by rendering the judicial lien void. *Equity does not allow this Court to alter application of the statutory formula to preserve a judicial lien and impair the debtor's exemption simply by issuing a marshaling order based on a hypothetical, future sale of assets.* The Court therefore rejects [the judgment lien creditor's] attempt to use marshaling as a defense against [the debtor's] lien avoidance motion.

*Id.* at 210–211 (emphasis added). Like the *Pray* court, we will not adjust the Statutory Lien amount simply based on a hypothetical, future subrogation.

In addition, as noted by the bankruptcy court in footnote 1 of the Memorandum Decision, another court refused a somewhat similar request by a judgment creditor to apportion (for the purposes of section 522(f)) multiple liens and encumbrances among different properties owned by two separate debtors (brothers and business partners) who were jointly and severally liable on several debts. In *In re Jones,* 2003 WL 23024502 (Bankr. M.D.Ga. December 12, 2003), the court refused to apply the equitable doctrine of marshaling as a defense to a section

**13.** On rare occasions, a statute's plain meaning may be superseded if literal application of its terms would produce an absurd result or an outcome demonstrably at odds with the intent of the statute's drafters. *Ron Pair Enters.,* 489 U.S. at 242, 109 S.Ct. 1026; *see also Moldo v. Charnock (In re Charnock),* 318 B.R. 720 (9th Cir. BAP 2004). Here, however, application of section 522(f) as written will not produce an absurd result. To the contrary, as illustrated by the hypothetical scenario set forth below, Milgard's proposed non-literal application of section 522(f) would result in absurd results.

A partnership has 120 partners; the partnership is insolvent and owes $500,000 to a tax agency that has recorded deficiency liens against all of the partners. Another creditor perfects judgment liens against the partners. One of the partners files for bankruptcy and seeks to avoid judicial liens against his residence. If Milgard's approach to section 522(f) applied, the bankruptcy court would count only 1/120 of the tax lien and judicial lien in making the section 522(f) calculation. Each time a partner filed bankruptcy, even if years apart, the court would have to similarly adjust the amount of the tax and judicial liens in determining whether liens could be avoided under section 522(f). This approach is neither practical nor consistent with the literal wording of section 522(f).

522(f) lien avoidance motion, even if such lien avoidance might potentially result in a windfall to the debtors.[14] *Id.* at *6.[15]

In light of the foregoing, we will not deviate from the statutory formula of section 522(f) merely to account for a hypothetical future subrogation, even if a literal application of section 522(f) may result in a windfall to Appellees.

## V.

## CONCLUSION

Because Milgard has not demonstrated that Appellees are subrogated to each other and because courts are bound to follow the statutory formula of section 522(f) as written, the bankruptcy court did not err in granting Appellees' motions to avoid Milgard's judicial liens under section 522(f). We therefore AFFIRM.

---

14. Whether such a "windfall" would even occur is questionable. Whoever pays the amount secured by the Statutory Lien (assuming such a payment is even made) would not receive a "windfall" and in fact may not have a secured claim that survives the bankruptcy discharge of the other. Any unsecured subrogation claim will have been discharged.

15. In so holding, the court acknowledged that under *Lehman v. VisionSpan, Inc. (In re Lehman)*, 205 F.3d 1255, 1257 (11th Cir. 2000), bankruptcy courts may deviate from the plain language of section 522(f)(2)(A)

when its application will result in a windfall to the debtor. The court distinguished *Lehman* by holding that a windfall to the debtors was uncertain. There is no Ninth Circuit case similar to *Lehman* holding that the statutory formula should not be applied literally; in fact, the Ninth Circuit's affirmance in *Hanger* is inconsistent with *Lehman*. The *Hanger* decision supports following the "plain language" of the statutory formula. *Hanger v. Bank of America (In re Hanger)*, 196 F.3d 1292 (9th Cir.1999).